This is a dispute about an equipment lease contract. The plaintiff, Potomac Leasing Company, sued Henry R. Bulger for $3,965.42. That amount represented the accelerated lease payments on an ice cream machine Potomac claims Bulger had agreed to lease. Bulger counterclaimed, alleging that he had been defrauded by Potomac and its agent, Royal Equipment Company, and that the contract he had signed was unconscionable. Royal was added as a defendant. Potomac argued that Royal was not its agent and that Bulger was bound by the contract he signed. The jury returned a verdict against Potomac for $200,000 and against Royal for $100,000, and the court entered judgment on that verdict. Potomac filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. The trial judge denied both motions after a hearing. Potomac appeals from that denial, arguing six errors in the trial of the case. Royal is not a party to this appeal.
Most of the facts of this case are sharply disputed. Bulger owned a snack bar in Florala, Alabama, and was approached by W.M. Johnson, an agent of Royal. Johnson proposed that Bulger lease an ice cream machine for the snack bar "as an alternative to financing." Bulger testified that he thought he was entering into a lease/purchase arrangement, and that at the end of three years he could make three additional lease payments and then own the machine. Bulger testified that he did sign some papers Johnson had on a clipboard, but that he was not given a chance to read them, and that Johnson did not leave a copy of the agreement with Bulger. He also testified that when he received a copy of the papers in the mail from Potomac, he discovered that what he had signed was merely a lease and that at the end of three years he would be required to return the machine to Potomac.
Bulger then attempted to rescind the agreement because it did not contain an option to purchase the machine. Potomac, pursuant to a clause in the lease, accelerated all payments due under the lease and filed suit against Bulger in district court. Potomac appealed from an adverse judgment in that court to the circuit court of Covington County, where Bulger counterclaimed.
 I
First, Potomac argues that the jury's finding that Royal was its agent was *Page 309 
against the weight of the evidence and that the trial judge should have granted Potomac's motion for JNOV or, in the alternative, ordered a new trial.
Our rule of review of a denial of a motion for JNOV based on a "weight of the evidence" ground is well-settled. A motion for JNOV should be denied if there is any conflict in the evidence for the jury to resolve, and the existence of such a conflict is to be determined by the scintilla rule. Stauffer ChemicalCo. v. Buckalew, 456 So.2d 778, 782-83 (Ala. 1984). The verdict of a jury is presumed correct and will not be set aside unless it is against the weight and preponderance of the evidence, and this presumption of correctness of a jury verdict is strengthened when, as in the present case, the trial judge refuses to grant a motion for a new trial. TG Y Stores v.Atchley, 414 So.2d 912, 914 (Ala. 1982).
The existence and scope of a principal-agent relationship is a question of fact to be determined by the jury, and any misrepresentation of an agent may be imputed to his principal.Continental Electric Co. v. American Employers' Insurance Co.,518 So.2d 83, 87 (Ala. 1987). The jury in this case apparently found that Royal was Potomac's agent.
There was sufficient evidence for the jury to find a principal/agent relationship between Potomac and Royal. Potomac claims that the evidence shows only that Royal had permission to distribute Potomac's lease application forms to customers. We note, however, other evidence from which the jury could have determined that Royal was acting as the agent of Potomac: Potomac placed its leasing documents with Royal and encouraged Royal to present them as a "financing alternative" to prospective customers; Royal accepted the first and last lease payments for Potomac; Royal delivered the leased equipment to Bulger's premises and obtained a delivery receipt; the transaction negotiated by Royal was subject to Potomac's approval; and if the transaction was not properly completed, Potomac would refuse to pay Royal until the transaction was changed to meet Potomac's requirements.
Bulger also presented evidence that tended to show that Potomac had ratified Royal's actions. As we stated earlier, agency is a question of fact to be decided by the jury. The evidence in this case was disputed, but when the evidence is in conflict the jury is free to believe or not believe the witnesses. Roberson v. Ammons, 477 So.2d 957, 961 (Ala. 1985). In this case, the jury apparently chose to believe Bulger's witnesses.
The presumption of correctness that attends a jury's factual determination was strengthened in this case when the trial judge denied the motion for a new trial; he held, "There was ample evidence from which a jury could find agency in this cause, or a ratification by Potomac Leasing of the acts of the third party after being fully advised of the acts of the third party, Potomac asserts was not its agent."
Under these facts, we conclude that the jury's verdict was not against the weight or preponderance of the evidence. The judgment of the trial court is not due to be reversed on this issue.
 II
Second, Potomac argues that the trial judge erred in admitting evidence of other transactions between Potomac and nonparties to this case. Specifically, the trial judge allowed Bulger to introduce documentary evidence of 11 transactions between Potomac and other customers that were negotiated by Royal. Potomac argues that this evidence was irrelevant and that the trial judge abused his discretion in admitting it.
The evidence of the other transactions was properly admitted on two grounds. First, the leases were proper material for impeachment. An employee of Potomac, Lori Frank, testified about the connections between Royal and Potomac:
 "Q. Ms. Frank, [are] there any business interconnections at all between your company and Royal Equipment? *Page 310 
 "A. No, sir. All we have done is paid for some equipment.
 "Q. You bought some equipment from them which you in turn lease, and in this case, to Mr. Bulger?
"A. That's right.
 "Q. That is the only business that you have done with Royal?
"A. That's correct.
"* * *
 "Q. What is all the business that you have done with Royal?
 "A. As he just asked and I just answered, we bought some equipment from Royal Equipment that was leased out in this case to Mr. Bulger.
 "Q. You did transactions of this same nature in several places in south Alabama and over in northwest Florida, did you not?
"MR. GIVHAN: Judge, we object to that.
 "THE COURT: I am assuming that your question is with Royal Equipment Company?
"MR. STOKES: Yes, through Royal Equipment Company.
"THE COURT: Yes, go ahead and answer the question."
Shortly after this testimony, and over repeated objections by Potomac, the trial judge allowed Bulger to introduce documentary evidence of the other lease transactions. This evidence was proper to impeach the testimony of the witness, who had testified that the lease with Bulger was the only business that Potomac had done through Royal.
We also hold that the other transactions were admissible as substantive evidence in this case. Evidence of past dealings of a party with a nonparty is generally excluded as irrelevant.Roberson v. Ammons, 477 So.2d 957 (Ala. 1985). However, this case falls under an exception to that general rule:
 "Once there is evidence that the representation to the plaintiff was false, the plaintiff may then offer evidence of similar representations to others about the same time for the purpose of bolstering the conclusion that the representation to him was false. Such is admissible even though there is no evidence warranting a finding that the misrepresentations were a part of a common plan or scheme.
 "Even where there is no issue of the defendant's intent to defraud, such intent may be a ground for an award of punitive damages. When such damages are claimed by the plaintiff, he may make proof of similar misrepresentations tending to show such intent."
C. Gamble, McElroy's Alabama Evidence § 70.03 (1) (3d ed. 1977), quoted with approval in Davis v. Davis, 474 So.2d 654,655 (Ala. 1985).
 "As a general rule, the doctrine of res inter alios acta operates to exclude evidence of acts and declarations of nonparties, or dealings of parties with nonparties, on grounds of irrelevancy. Loftin's Rent-All, Inc. v. Universal Petroleum, Ala.Civ.App., 344 So.2d 781 (1977). This rule is based, in part, upon the presumption that such collateral facts are incapable of affording any reasonable presumption or inference as to the principal matters in dispute. Id. This general rule is subject, however, to the limitation that when one's [motive] or intent is at issue, his acts, statements and conduct on other occasions which have a bearing upon his [motive] or intention upon the occasion in question are competent evidence. See generally, 29 Am.Jur.2d Evidence § 365 (1967). In fraud cases, where intent, knowledge and scienter constitute essential elements of the offense, evidence of similar frauds and misrepresentations are commonly admissible. Roan v. Smith, 272 Ala. 538, 133 So.2d 224 (1961); Johnson v. Day, 230 Ala. 165, 160 So. 340 (1935); 37 Am.Jur.2d Fraud and Deceit § 456 (1968). In passing upon the admissibility of such collateral matters, great latitude must be extended so as to afford the admission of any relevant evidence bearing upon the ultimate issue of fraud. Mid-State Homes, Inc. v. Johnson, 294 Ala. 59, 311 So.2d 312 (1975)." *Page 311 
Dorcal, Inc. v. Xerox Corp., 398 So.2d 665, 670-71 (Ala. 1981). See also, Roberson, supra, at 962.
We hold that the evidence presented of other transactions was admissible, based on this rule.
The trial judge in this case also admitted evidence regarding Potomac's actions in charging other customers for the filing of UCC Form One (UCC-1) financing statements. Potomac argues that the trial judge erred in admitting evidence of these transactions with nonparties to the litigation.
In his counterclaim, Bulger alleged that Potomac failed to disclose until after the fact that he had to pay filing fees under the Uniform Commercial Code in excess of the fees actually charged to Potomac. It is not disputed that Potomac sought $24.50 for filing a UCC-1. It is also not disputed that no UCC-1 was filed with regard to the Bulger transaction. Potomac's witness testified that the UCC-1 was not filed in Bulger's case because Bulger did not pay the required fee.
Under these facts, it was proper for Bulger to show that other customers of Potomac had been charged the same fee in very similar transactions set up by Royal in northwest Florida and in Alabama, and that no UCC-1 was filed in any of these instances even though the fee was paid. For the reasons stated above, the trial judge did not err in admitting this evidence.
 III
Third, Potomac argues that the trial judge erred when he admitted certain evidence that went beyond the scope of the pretrial order. Potomac argues that the trial judge limited the issues to those contained in the pleadings and that the pleadings do not contain any allegations of a "scheme or pattern of fraud" on the part of Potomac, and, therefore, that the evidence of the 11 other transactions was barred by the pre-trial order.
However, "scheme or pattern of fraud" is not the only basis on which this evidence could have been admitted. The trial judge explicitly recognized that this evidence was proper on several other issues that were raised in the pleadings, including Bulger's claim that Royal was Potomac's agent and his claim that Royal failed to disclose that excessive UCC filing fees would be charged and that the UCC-1 form would not be filed. This evidence did not go beyond the scope of the pretrial order and the trial judge, therefore, did not abuse his discretion when he admitted the evidence of the other transactions.
 IV
Fourth, Potomac argues that the imposition of punitive damages against a principal for the actions of its agent is against public policy and, therefore, that the jury verdict against Potomac, based on the actions of Royal, should be set aside. Potomac urges this Court to abandon the rule that punitive damages may be imposed on a principal for the actions of its agent in favor of the rule enunciated in the Restatement(Second) of Torts § 909 (1977). This we decline to do, and we conclude that there was sufficient evidence presented in this case to support an award of punitive damages under present Alabama law. In his order denying JNOV or a new trial, the trial judge wrote:
 "There was ample evidence from which a jury could find agency in this cause, or a ratification by Potomac Leasing of the acts of the third party after being fully advised of the acts of the third party [that] Potomac asserts was not its agent. The evidence showed that Potomac Leasing ignored efforts by the Defendant Bulger to rescind the contract in conformity with the Uniform Commercial Code; the evidence showed that Potomac charged 21% interest on what it deemed to be late payments; the evidence showed Potomac Leasing made excessive charges for a UCC I financial statement and failed to file said statement; and the evidence showed that Potomac Leasing charged $15.50 per phone call in calling the Defendant."
We agree with the trial judge. *Page 312 
 V
Fifth, Potomac urges that Bulger did not reasonably rely on representations made by Potomac in this case and, therefore, that he did not prove all the elements of a fraud claim. Reasonable reliance is a necessary element of a cause of action for fraud, and a party's failure to exercise some measure of precaution to safeguard his own interest precludes an action for fraud. Torres v. State Farm Fire Casualty Co.,438 So.2d 757, 759 (Ala. 1983).
The parties dispute the exact circumstances surrounding the signing of the documents. We note, however, that there was testimony that Bulger signed three documents that were placed, one on top of the other, on a clipboard:
 "Q. Now, tell the jury, if you would Roger, what he told you with reference to either leasing or purchasing this soft serve ice cream machine?
 "A. We were under the understanding — Mr. Johnson said that we would make thirty-six payments and make three additional payments and the machine would be ours. They would maintain the machine and everything. We was under that impression and did not say anything otherwise.
 "Q. Did he have anything with him in the way of paper work or documents or that sort of thing?
 "A. He had paper work on a clipboard with a large top; you could not read anything. And it was late and he was in a hurry and did not give me a chance — I asked for a copy of the lease. He said that he would mail me [a] copy of the lease; I signed it; he did not give me a chance to read anything. He said that I would get a copy of the lease in the mail, that he did not have another copy with him at this time."
It is not disputed that Bulger attempted to rescind the contract as soon as he got a copy and read its terms. The jury could have found from this evidence that Johnson represented that the agreement signed was a financing arrangement for the purchase of the machine, and not merely a three-year lease, and that Bulger had reasonably relied on that representation. We hold that the element of reasonable reliance was sufficiently proven in this case.
 VI
Sixth, Potomac contends that certain testimony of conversations between Royal and nonparties to this litigation was due to be excluded as hearsay. Bulger offered the testimony to show that similar misrepresentations had been made by Royal to other parties. Without setting out that testimony, we hold that the trial judge did not err in allowing it. See our discussion under section II, above. See also Davis v. Davis,474 So.2d 654, 655 (Ala. 1985), and C. Gamble, McElroy'sAlabama Evidence, § 70.03 (1) (3d ed. 1977).
AFFIRMED.
TORBERT, C.J., and JONES, ALMON and BEATTY, JJ., concur.