Ford Motor Credit Company ("FMCC") sued Gregory T. Battles for a deficiency on Battles's lease of a Ford truck that he voluntarily surrendered to FMCC prior to the expiration of the lease term. Battles counterclaimed, alleging that FMCC had committed an intentional fraud against him, specifically, that FMCC had represented to Battles that he could surrender the leased truck prior to the expiration of the lease term without incurring a penalty or *Page 689 
an early termination fee. In a subsequent amendment to his counterclaim, Battles alleged that FMCC had slandered him by willfully publishing false information regarding the repossession of the truck and his being in default on the payments under the lease with FMCC.
Battles also filed a third-party complaint against Eastwood Ford, Inc. ("Eastwood"), the automobile dealership from which he actually had acquired the truck. Battles claimed that the sales personnel at Eastwood had acted as the agents of FMCC in the negotiations that led to Battles's leasing the truck and that Eastwood, in its agency capacity, had misrepresented the effect of his early termination of the lease.
FMCC moved for a summary judgment, supporting its motion with affidavits, depositions, answers to interrogatories, and briefs. After hearing oral argument on FMCC's summary judgment motion, the trial court entered a summary judgment for FMCC as to all of Battles's claims and made the judgment final pursuant to Rule 54(b), A.R.Civ.P. Battles appealed, and the trial court stayed further proceedings on FMCC's deficiency claim against Battles pending the resolution of this appeal.
In entering the summary judgment for FMCC, the trial court held that FMCC had made a prima facie showing that Eastwood was not the agent, servant, or employee of FMCC, and that, therefore, even if the alleged misrepresentations were made by employees of Eastwood, FMCC was not liable for those misrepresentations or for the breach of any contract that might have resulted from those misrepresentations. The trial court also held, with regard to Battles's slander claim, that FMCC had made a prima facie showing that it did not publish false or inaccurate information concerning Battles's credit record with FMCC. The court concluded that neither prima facie showing had been rebutted.
The issues raised on this appeal are: 1) whether the trial court erred in holding that, as a matter of law, no agency relationship existed between FMCC and Eastwood by which to impute liability to FMCC for the allegedly fraudulent misrepresentations made by Eastwood sales personnel; and 2) whether the trial court erred in holding that the credit information FMCC published regarding Battles's account with FMCC would not support a slander action.
Initially, we note that a motion for summary judgment may be granted only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), A.R.Civ.P.; Southern Guar. Ins. Co. v.First Alabama Bank, 540 So.2d 732 (Ala. 1989). The burden is, therefore, upon the moving party to clearly show that there is no material fact in dispute, and all reasonable inferences from the evidence are to be viewed most favorably to the nonmovant.Southern Guar. Ins. Co., supra.
Rule 56 is read in conjunction with the "substantial evidence rule," § 12-21-12, Ala. Code 1975, for actions filed after June 11, 1987. See Bass v. SouthTrust Bank of Baldwin County,538 So.2d 794 (Ala. 1989). In order to defeat a properly supported motion for summary judgment, the plaintiff must present substantial evidence, i.e., "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989).
Addressing now the issue whether the trial court erred in holding that no agency relationship existed between FMCC and Eastwood, we note the principle that when a defendant's liability is based on the theory of agency, agency may not be presumed, and that to defeat a defendant's properly supported summary judgment motion, the plaintiff must present substantial evidence of an agency relationship. Carlton v. Alabama DairyQueen, Inc., 529 So.2d 921 (Ala. 1988). Furthermore, agency is not determined by how the parties characterize their relationship, but by the facts of the case, Federal Land Bankof New Orleans v. Jones, 456 So.2d 1 (Ala. 1984), although an agency relationship may arise from facts that lead others to believe that such a relationship has been created. *Page 690 Wood v. Holiday Inns, Inc., 508 F.2d 167 (5th Cir. 1975).
The trial court, in entering the summary judgment for FMCC, summarized the facts before it at that time:
 "On or about December 23, 1985, the Defendant/Counter Plaintiff Gregory T. Battles obtained a 1986 Ford Ranger truck from Eastwood Ford, Inc., by signing a 48-month, written lease. Soon after Battles leased the truck, Eastwood Ford assigned the lease to Ford Credit. Ford Credit is engaged in the business of financing the purchase of vehicles and in purchasing retail contracts and retail lease agreements. Ford Credit and Eastwood Ford had entered an agreement setting forth the terms by which Ford Credit would purchase leases entered into by Eastwood Ford with various customers.
 "Battles maintains that unidentified salesmen for Eastwood Ford (a third party defendant herein, which is now in bankruptcy), while allegedly acting in a capacity as agents, servants, or employees of Ford Credit, misrepresented to Battles, among other things, that he could terminate the written lease at the end of two (2) years without any early termination fee or other further financial obligation under the terms of the lease agreement. Battles further claims that he believed the representations that he could exercise an early termination without monetary penalty and in reliance thereon leased the truck.
 "Battles testified that he 'presumed' that the salesmen at Eastwood Ford were Ford Credit's representatives. However, Mr. Battles admits [that] when he executed the lease . . . no one at Eastwood Ford told him that they worked for Ford Credit or were Ford Credit employees. He also testified that the sign outside the dealership said 'Eastwood Ford' and not 'Ford Motor Credit.' Battles admits that he agreed for the lease executed by him to be a four-year lease. Battles also admits that before he signed the lease he went over the lease and read over all the contract before he signed it.
 "Paragraph 28 of the lease signed by Battles provides, in relevant part, that:
 " 'This Lease sets forth all of the agreements of the Lessor and the Lessee for the lease of the Vehicle. There is no other agreement. The only way this Lease can be changed is by a new lease signed by Ford Credit.'
 "Battles admits that he never signed another agreement with Ford Credit. He also admits he was obligated to pay forty-eight (48) monthly payments unless Ford Credit allowed him under paragraph 19 of the lease to terminate the lease early, but he never got an agreement with Ford Credit to terminate the lease early.
 "After Battles signed the lease, the lease was assigned to Ford Credit. Thereafter, Mr. Battles made his monthly lease payments to Ford Credit. In late 1987, Mr. Battles attempted to terminate his lease by turning his truck over to Eastwood Ford. Eastwood refused to accept the truck. He tried to do likewise at Ford Credit's Birmingham offices but Ford Credit refused to allow him to leave his truck. Thereafter, Mr. Battles stopped making lease payments. The truck was peacefully repossessed by Ford Credit and sold at auction."
In entering the summary judgment for FMCC, the trial court relied primarily on Kimbrel v. Mercedes-Benz Credit Corp.,476 So.2d 94 (Ala. 1985). In Kimbrel, this Court addressed the issue whether an agency relationship existed under facts quite similar to those of the present case. There, the question was whether an agency relationship existed between a finance company and the seller of a tractor so as to make the finance company liable for the actions of the seller. While the finance company in Kimbrel had a right of approval of the buyer's credit and its name appeared on the contract of sale and it dictated the terms of the buyer's payments, the Court concluded that none of those facts was inconsistent with the extending of credit by an institution. The Court further held that those facts would not legally amount to a ratification of any statements *Page 691 
made during negotiations by the employees of the seller of the tractor and that there was nothing in the record that would support a finding of agency.
The trial court in the present case, in entering the summary judgment, stated:
 "Here, the gravamen of Battles's counterclaim is that Eastwood Ford's salesmen were allegedly acting in some agency capacity on behalf of Ford Credit and made certain misrepresentations that induced Battles to enter the lease. The facts of the instant case and [those of] Kimbrel are almost identical. As in Kimbrel, Battles admits that at the time he leased the vehicle he only negotiated with Eastwood Ford's salesmen and that no representative of Ford Motor Credit represented to him that he could terminate the lease without penalty. As in Kimbrel, the fact that Ford Credit had a right of approval over Battles's credit and that Ford Credit's name appeared on the lease and that Ford Credit controlled the terms of the lease are not dispositive of the agency issues. As in Kimbrel, paragraph 28 of the instant lease clearly provides that the lease sets forth all of the agreements between the parties and that there are no other agreements and that modification of the lease can only be made through a new lease signed by Ford Credit. As in Kimbrel, Battles's claimed modification to the contract, [i.e., a modification providing] that he could terminate the four-year lease at the end of two years, is not present on the face of the lease. Moreover, Battles admits he read all the Lease and that he never got an agreement with Ford Credit to terminate the lease early.
 "As the Alabama Supreme Court held in Kimbrel, none of these actions is inconsistent with the extending of credit by Ford Motor Credit, and these actions do not legally amount to a ratification by Ford Motor Credit of any statements made to Mr. Battles by Eastwood Ford's representatives. Moreover, Battles's claims that . . . Ford Credit 'number one salesman' plaques [are displayed] on the walls of Eastwood Ford's dealership are not sufficient to meet the 'substantial evidence' hurdle necessary to infer an agency relationship because they are clearly rebutted by the express terms of Kimbrel. . . ."
After reviewing our decision in Kimbrel and the facts that were before the trial court when it entered the summary judgment for FMCC on Battles's fraud claim, we conclude that the summary judgment was proper as to that claim. Our conclusion in this regard is further supported by our recent decision in Butler v.Aetna Finance Co., 587 So.2d 308 (Ala. 1991).
In Butler, the plaintiffs claimed, among other things, that Aetna fraudulently misrepresented certain information to them. The fraud claims were predicated on the plaintiffs' allegations that salespersons at an electronics store at which the plaintiffs purchased a television on credit were agents of Aetna, the company to which the store subsequently assigned the credit contract. In affirming a summary judgment for Aetna, we stated:
 "The Butlers testified that the Rex salespersons handled the credit transaction, that the salespersons were knowledgeable about interest rates and about the circumstances surrounding a failure to pay off the balance within 90 days, and that the salespersons told them that Rex used [Aetna] for financing all the time. Also, the Butlers presented the deposition of an [Aetna] representative . . . who confirmed that the financing documents were provided to Rex by [Aetna]. However, just as in Kimbrel, we find none of these actions to be inconsistent with the extending of credit by an institution."
587 So.2d at 311.
In arguing that the summary judgment for FMCC was improper, Battles relies primarily on Potomac Leasing Co. v. Bulger,531 So.2d 307 (Ala. 1988). In Potomac Leasing, in which a defendant appealed from a judgment entered on a jury verdict, we held that there was sufficient evidence in the record from which the jury could find that an agency relationship existed between Potomac and Royal Equipment Company. The evidence showed that a Royal employee proposed that Bulger lease *Page 692 
an ice cream machine for the snack bar that Bulger owned. After Bulger executed the lease and received a copy, he attempted to rescind the agreement because it did not contain an option to purchase the machine. Thereafter, Potomac sued Bulger for the amount due under the lease, and Bulger filed a fraud counterclaim against Potomac, alleging that Royal was an agent of Potomac and that the Royal employee represented to him that the lease did contain a purchase option. In affirming the judgment for Bulger, we noted that the verdict was supported by, among other things, evidence that "Potomac Leasing placed its leasing documents with Royal and encouraged Royal to present them as a 'financing alternative' to prospective customers." 531 So.2d at 309.
After considering the facts in Potomac Leasing and the facts in the present case, we find the cases to be distinguishable in one crucial respect. In Potomac Leasing, Bulger entered the lease agreement directly with Potomac on a lease form that had been provided to Royal by Potomac. This evidence, along with the fact that Potomac encouraged Royal to present the lease to its customers, created a different situation from that in the present case. Here, the evidence shows that Battles entered into a lease agreement with Eastwood and that Eastwood subsequently assigned the lease to FMCC. Also, the evidence reveals that FMCC was not obligated to purchase the lease from Eastwood, if FMCC elected not to do so. Finally, there is no evidence in the present case that FMCC encouraged Eastwood to persuade customers to enter into lease agreements.
Considering the evidence that was before the trial court in the present case, in the context of our prior decisions concerning the existence of an agency relationship, we conclude that the trial court correctly entered a summary judgment for FMCC on Battles's fraud claims, based on its conclusion that Battles had presented no substantial evidence of an agency relationship between FMCC and Eastwood.
The second issue raised on this appeal is whether the trial court erred in entering the summary judgment for FMCC on Battles's slander claim. In an amendment to his counterclaim, Battles alleged that FMCC slandered him by publishing a false and defamatory statement that the truck that Battles leased had been repossessed and that he had defaulted on the payments required under the terms of the lease.
With regard to this issue, the record reveals that Battles admitted in his deposition that he signed a four-year lease and agreed for the lease executed by him to be a four-year lease. Battles also admitted that before he signed the lease, he read over all of the contract. Battles also admitted that he was obligated to pay 48 monthly lease payments unless FMCC allowed him under paragraph 19 of the lease executed by him to terminate the lease early and that he never got an agreement with FMCC to terminate the lease early. At the end of the second year of the four-year lease, Battles ceased making payments on the lease and then FMCC, with Battles's consent, repossessed the vehicle; FMCC then sold it, sued for the deficiency, and reported this information to Merchants' Credit Association and Credit Bureau, Inc. In response to FMCC's motion for a summary judgment on Battles's slander claim, Battles presented no evidence to rebut FMCC's prima facie showing that there had been no slander.
It is well established in Alabama that in an action alleging defamation, truth is a complete and absolute defense. See Jakobv. First Alabama Bank of Montgomery, 361 So.2d 1017 (Ala. 1978), cert. denied, 439 U.S. 968, 99 S.Ct. 460, 58 L.Ed.2d 428
(1978); Ripps v. Herrington, 241 Ala. 209, 1 So.2d 899 (1941). In view of the evidence in the record, we conclude that FMCC met its burden of making a prima facie showing that no false information was reported. We further conclude that Battles did not meet his concomitant burden of showing by substantial evidence that FMCC had slandered his credit reputation. Therefore, the summary judgment *Page 693 
for FMCC is also due to be affirmed as to Battles's slander claim.
AFFIRMED.
MADDOX, SHORES, ADAMS, STEAGALL and KENNEDY, JJ., concur.