Gerry W. WILSON, Plaintiff,

v.

DIRECT CABLE TECHNOLOGIES, INC., et al., Defendants.

J.W. NELSON, et al., Plaintiffs,

v.

DIRECT CABLE TECHNOLOGIES, INC., et al., Defendants.

Martin JOHNSON, Plaintiff,

v.

DIRECT CABLE TECHNOLOGIES, INC., et al., Defendants.

Anthony PRESCOTT, Plaintiff,

v.

DIRECT CABLE TECHNOLOGIES, INC., et al., Defendants.

Harlan BURTON, Plaintiff,

v.

DIRECT CABLE TECHNOLOGIES, INC., et al., Defendants.

Lanier BURTON, Plaintiff,

v.

DIRECT CABLE TECHNOLOGIES, INC., et al., Defendants.

Civil A. Nos. 96–A–1156–E, 96–A–1157–E, and 96–A–1172–E thru 96–A–1175–E.

United States District Court, M.D. Alabama, Eastern Division.

April 22, 1997.

Mark A. Treadwell, III, Oliver & Sims, Dadeville, AL, W. Lee Pittman, Nat Bryan, J. Robert Potter, Pittman, Hooks, Dutton & Hollis, P.C., Birmingham, AL, for plaintiffs.

Clement Clay Torbert, III, Frank H. McFadden, Barbara J. Gilbert, Capell, Howard, Knabe & Cobbs, P.A., Montgomery, AL, for Dow Electronics, Inc., Dow Financial, Inc.

Clement Clay Torbert, III, Capell, Howard, Knabe & Cobbs, P.A., Montgomery, AL, David A. Elliott, Richard C. Keller, Burr & Forman, Birmingham, AL, F. Hampton McFadden, Jr., Haskell, Slaughter, Young, Johnston & Gallion, Birmingham, AL, for American General Financial Center.

Direct Cable Technologies, Inc., Montgomery, AL, pro se.

## MEMORANDUM OPINION

ALBRITTON, District Judge.

### I. INTRODUCTION

This cause is before the court on the Motions for Summary Judgment filed by defendants American General Financial Center ("AGFC") and Dow Electronics, Inc. ("Dow Electronics") on January 24, 1997 in Civil Action Nos. 96–A–1 156–E, 96–A–1157–E, 96–A–1172–E, 96–A–1173–E, 96–A–1174–E, and 96–A–1175–E.

On June 13, 1996, Gerry W. Wilson ("Wilson"), J.W. Nelson, and Mary Frances Nelson ("M.Nelson"), and on June 20, 1996, Martin Johnson ("Johnson"), Anthony Prescott ("Prescott"), Harlan Burton ("H.Burton"), and Lanier Burton ("L.Burton"), (collectively "the Plaintiffs") filed their respective cases in the Circuit Court of Tallapoosa County, Alabama, each naming the following defendants: Direct Cable Technologies, Inc. ("Direct Ca-

ble"); American General Finance, Inc. (Alabama) ("AGF (Alabama)"); AGFC; American General Finance Corporation ("AGF Corporation"); American General Finance, Inc. (Indiana) ("AGF (Indiana)"); American General Corporation ("AGC"); American General Finance Management Corporation ("AGFMC"); Dow Electronics; Dow Financial, Inc. ("Dow Financial"); and fictitious defendants one through fifteen.

In their respective complaints, each Plaintiff asserts the following claims: fraudulent misrepresentation; fraudulent suppression of material facts; deceit; willful, wanton and/or negligent misrepresentation; breach of contract; negligent and/or wanton training or supervision; negligent and/or wanton sale; and conspiracy.

On July 17, 1996, Johnson, Prescott, H. Burton, and L. Burton, and on July 19, 1996, J.W. Nelson and M. Nelson, filed an Amended Complaint in the Circuit Court of Tallapoosa County, Alabama substituting AGFC for one or more fictitious defendants. Similarly, on July 19, 1996, Wilson filed an Amended Complaint in the Circuit Court of Tallapoosa County, Alabama substituting Card Services for one or more fictitious defendants.

On July 22, 1996 and July 24, 1996, and by addendum on July 26, 1996, these cases were removed to this court.

On December 24, 1996, the court ordered the Plaintiffs' cases consolidated for all pretrial matters.

No service of process having been had on Card Services or on Direct Cable, it is ORDERED that Card Services and Direct Cable are DISMISSED without prejudice pursuant to Rule 4(m), Fed.R.Civ.P. Also, it is undisputed that Dow Financial was not a separate entity but was an operating division of Dow Electronics. Therefore, it is ORDERED that Dow Financial is DISMISSED as a separate party-defendant in all of the Plaintiffs' cases. After the dismissals and previous orders of the court, AGFC and Dow

Electronics (collectively "the Defendants") are the only remaining defendants in each of the Plaintiffs' cases.

The court does not find oral argument to be necessary, and the Plaintiffs' requests for oral argument are DENIED.

This court has subject matter jurisdiction in each of the Plaintiffs' cases pursuant to 28 U.S.C. § 1332, based upon the parties' diversity of citizenship and an amount in controversy exceeding $50,000.00, exclusive of interest and costs.

For the reasons that follow, the court finds that the Motions for Summary Judgment are due to be GRANTED in all of the Plaintiffs' cases.

## II. *FACTS*

Submissions before the court establish the following facts: [1]

All of the Plaintiffs are Alabama residents. AGFC is a Utah corporation with its principal place of business in Utah. Dow Electronics is a Florida corporation with its principal place of business in Florida.

In June 1994, each of the Plaintiffs heard a sales presentation by Newman, a Direct Cable representative, concerning a satellite programming system. Newman told them that the system would cost $39.00 per month for five years, and after five years they would only have to pay $19.00 per month for programming. Newman never told them that an interest rate would be applied to the balance of their respective accounts each month.

Shortly thereafter, each of the Plaintiffs decided to purchase the satellite programming system and signed documents that Newman provided to them. Among these signed documents was a credit application, which states that the system's purchase price was being financed by AGFC through a revolving credit card account. The credit application also states that the purchaser would

1. On February 24, 1997 and February 25, 1997, AGFC filed a Motion to Strike the Affidavit of Mitch Newman ("Newman") submitted by the Plaintiffs in each of the cases. The court has not considered any hearsay statements in this affidavit or any part of the document not specifically designated as being relevant by the submitting party. (see Order of January 28, 1997.) Accordingly, the Motion to Strike in each of the Plaintiffs' cases is DENIED as moot.

be bound by the terms of the card holder agreement. That agreement, attached to the credit application, states that the annual percentage rate for the purchase of the system would be 15.96%, and states that the purchaser would be assessed a finance charge based upon the annual percentage rate if the purchaser did not pay off the balance.

Dow Electronics, a wholesale distributor of electronic products to retailers, facilitated AGFC's financing of the Plaintiffs' satellite programming systems. AGFC subsequently approved the financing of all the Plaintiffs' respective system purchases. At least several months later, well after the Plaintiffs' systems were installed, the Plaintiffs first complained about the AGFC financing arrangement.

## III. *SUMMARY JUDGMENT STANDARD*

The purpose of a motion for summary judgment is to challenge the contention that a case presents a genuine issue of material fact necessitating a trial. *See Matsushita Elec. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The movant "always bears the initial responsibility of informing the district court of the basis for its motions." *Id.* at 323, 106 S.Ct. at 2553. Accordingly, summary judgment is appropriate if the movant demonstrates that the non-movant has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552; *Tidmore Oil Co. v. BP Oil Co.,* 932 F.2d 1384, 1387–8 (11th Cir.), *cert. denied,* 502 U.S. 925, 112 S.Ct. 339, 116 L.Ed.2d 279 (1991).

If the movant succeeds in demonstrating the absence of a material issue of fact, the burden shifts to the non-movant to establish, with evidence beyond the pleadings, that a genuine issue material to the non-movant's case does indeed exist. *See Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991); *see also* Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of [his] pleading, but [his] response ... must set forth specific facts showing that there is a genuine issue for trial."). A dispute of material fact "is 'genuine'... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. It must present "affirmative evidence" of material factual conflicts to defeat a properly supported motion for summary judgment. *Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514. If the non-movant's response consists of nothing more than conclusory allegations, the court must enter summary judgment for the movant. *See Peppers v. Coates,* 887 F.2d 1493 (11th Cir.1989). On the other hand, the evidence of the non-movant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

## IV. *DISCUSSION*

### A. *The Claims Against AGFC*

#### 1. *The Fraud and Negligence Claims*

Each of the Plaintiffs brings fraud and negligence claims against AGFC based on alleged misconduct of Newman, contending that AGFC is liable because Direct Cable or Newman was its agent. AGFC contends that the undisputed material evidence establishes as a matter of law that no agency relationship existed.

In Alabama, an "agency [relationship] may not be presumed," *see, e.g., Battles v. Ford Motor Credit Co.,* 597 So.2d 688, 689

(Ala.1992), and the party claiming that such a relationship exists has the burden to present "substantial evidence" of its existence. *Id.* (citation omitted). The test for determining whether one is an agent of the defendant is whether the defendant "has reserved the right of control over the means by which the work is done." *Lankford v. Gulf Lumber Co., Inc.,* 597 So.2d 1340, 1343 (Ala.1992) (citations omitted). Stated differently, the defendant "must have reserved the right to direct not only what shall be done, but also how it shall be done." *Id.* (citation omitted). If the evidence is in dispute, the existence and scope of an agency relationship is a question to be determined by the trier of fact. *City of Birmingham v. Benson,* 631 So.2d 902, 906 (Ala.1993) (citation omitted).

Here, the Plaintiffs point to the fact that AGFC did not market its private label credit card and did not directly solicit potential cardholders. The Plaintiffs also observe that AGFC created credit application forms and other documents, including sales slips, that it gave to Dow Electronics, which, in turn, gave these documents to Direct Cable to enable AGFC financing. Relatedly, the Plaintiffs point out that AGFC approved the financing of purchases by some Direct Cable consumers, and that before the installation of these consumers' satellite equipment, AGFC set the credit limits and financing terms.

■ Alabama law is well settled that a finance company does not make a retailer its agent merely by providing the retailer with credit application forms bearing the finance company's name, by retaining a right to approve a consumer's credit, and by dictating the terms of the consumer's payments. *See, e.g., Mardis v. Ford Motor Credit Co.,* 642 So.2d 701 (Ala.1994) (holding that no agency relationship existed between the finance company and the retailer even though the finance company dictated the terms of the consumer's payments, printed its name on the contract that the consumer signed with the retailer, retained the right to approve the consumer's credit, and had an agreement with the retailer to allow the retailer to obtain financing of its own inventory); *Pope v. World Omni Fin. Corp.,* 599 So.2d 15 (Ala. 1992) (holding that no agency relationship

existed between the finance company and the retailer's sales manager even though the finance company financed the consumer's purchase, had the right of prior approval of the consumer's credit, included its name on the contract that the consumer signed with the retailer, and dictated the terms of the consumer's payments); *Butler v. Aetna Fin. Co.,* 587 So.2d 308 (Ala.1991) (holding that no agency relationship existed between the finance company and the retailer's salespersons even though the finance company supplied financing documents to the retailer, approved the consumers' credit application, routinely provided financing to the retailer's consumers, and received an assignment of the financing contract after the retailer completed the sale with the consumers); and *Kimbrel v. Mercedes–Benz Credit Corp.,* 476 So.2d 94 (Ala.1985) (holding that no agency relationship existed between the finance company and the retailer even though the finance company had a right of approval over the consumer's credit, the finance company's name appeared on the contract that the consumer signed with the retailer, and the finance company dictated the terms of the consumer's payments). Likewise, Alabama law is well settled that a finance company's "'approval of the [finance] contract and its terms [does] not legally amount to a ratification of statements made by the retailer during negotiations by the retailer's employees." *Pope,* 599 So.2d at 17 (quoting *Turner v. Deutz–Allis Credit Corp.,* 544 So.2d 840, 842 (Ala.1988)). *See also Butler,* 587 So.2d at 311.

Trying to distinguish these well-settled principles, which equate to a finance company generally not being liable for a retailer's misconduct to consumers, the Plaintiffs cite the following cases: *Ragsdale v. Life Ins. Co. of North Am.,* 632 So.2d 465 (Ala.1994) (holding the insurance company liable for misconduct by two of the City's employees where the insurance company trained these two employees to administer the City employees' group insurance policy and explain the policy's benefits to the other City employees); *Union Mortgage Co., Inc. v. Barlow,* 595 So.2d 1335 (Ala.1992), *cert. denied,* 506 U.S. 906, 113 S.Ct. 301, 121 L.Ed.2d 224 (1992) (holding the finance company liable for the

retailer's misconduct where the finance company had a contractual relationship with the retailer and had specific knowledge at the time of the transaction of the retailer's fraud, and the retailer did not submit loan applications to any other finance company or perform services for any applicant to whom the finance company denied credit); *Potomac Leasing Co. v. Bulger,* 531 So.2d 307 (Ala. 1988) (holding the leasing company liable for the retailer's misconduct where the leasing company encouraged the retailer to present the lease as a financing alternative to customers, allowed the retailer to accept first and last payments on the lease, retained the right of approval over the transactions that the retailer negotiated, and would not pay the retailer until the retailer changed the transaction's terms to meet the leasing company's requirements); *Transport Acceptance Corp. v. Vincent,* 521 So.2d 976 (Ala.1988) (holding the finance company liable for the seller's misconduct where the finance company had extensive dealings with the seller in the sales of the finance company's repossessed vehicles, held title to the truck until the day of sale to the debtors, was directly involved in the negotiations between the debtors and the seller, and made fraudulent misrepresentations to the debtors); and *Perry v. Household Retail Servs., Inc.,* 953 F.Supp. 1370 (M.D.Ala.1996) (denying summary judgment on the claim against the finance company for the *distributor's* alleged misconduct where the finance company had a contract to transmit certain sales proceeds to retailers, and, pursuant to that contract, the distributor agreed to obtain written authorization from retailers satisfactory to the finance company, designating the distributor as the agent to accept, receive, and transmit the sales proceeds to the retailers).

■ All of the cases cited by the Plaintiffs are distinguishable from the facts established here. Direct Cable's customers, such as the Plaintiffs, did not have to finance the satellite equipment through AGFC and could pay cash or choose from several financing sources, such as a local bank or a personal credit card. In fact, Direct Cable sold satellite equipment from a number of distributors besides Dow Electronics, each having one or more sources of financing. (Robert Horn-

beck's ("Hornbeck"), Newman's, and John J. Yodzis' ("Yodzis") Affidavits.)

Moreover, AGFC had no contract with Direct Cable or Newman and did not train Direct Cable employees, including Newman, how to negotiate with consumers, how to sell satellite dishes, what to say to consumers, and how otherwise to conduct their day-to-day activities at the time of or prior to the sales at issue. AGFC also did not participate in negotiations with potential customers, did not have any control over how long Direct Cable's employees worked or where they worked, and did not have any authority or power to hire, discipline, or fire Direct Cable's employees. In sum, Direct Cable's employees neither worked for nor reported to AGFC. (Hornbeck Affidavits.)

Additionally, AGFC did not share in any profits earned by Direct Cable from any of the sales made to the Plaintiffs. AGFC also did not learn of the alleged misrepresentations until well after the sales were consummated, and then it learned of the alleged misrepresentation from the Plaintiffs. (Hornbeck Affidavits.)

■ The Plaintiffs argue that a July 29, 1994 letter from AGFC's Bruce Piggott ("Piggott") to Dow Electronics' Yodzis indicates that AGFC had an agency relationship with Direct Cable or Newman at the time of the Plaintiffs' purchases. In this letter, Piggott apparently refers to satellite dealers as "our dealers." However, no direct reference concerning Direct Cable or Newman is made in this letter, which is dated after the sales at issue were consummated. Moreover, the Plaintiffs did not affirmatively submit any evidence of Piggott's intent in using the phrase "our dealers." In contrast, Yodzis testified that he had never heard anyone at AGFC refer to satellite dealers as AGFC's dealers. Therefore, this random letter does not establish a fact issue as to whether AGFC controlled or retained the right of control over Direct Cable or Newman at the time of or prior to any of the sales at issue.

Furthermore, although the Plaintiffs cite measures taken by AGFC to combat alleged misconduct by retailers, such measures do not show that AGFC controlled or retained

the right of control over Direct Cable or Newman at the time of or prior to any of the sales at issue. Specifically, with respect to complaints about alleged misconduct occurring at or before the time of the sales at issue, Dona Hall ("Hall") testified in deposition that, upon receiving a customer's complaint, AGFC would contact the distributor and request that the distributor resolve the customer's complaint. Hall further testified that if the distributor did not resolve the customer's complaint, AGFC would charge back the customer's account to the distributor, resulting in the customer having a zero balance with AGFC. Hornbeck stated by affidavit that this is what AGFC did with the Plaintiffs' accounts upon learning of their alleged dissatisfaction with their satellite system purchases. Thus, AGFC did not directly deal with Direct Cable concerning customer complaints.

The Plaintiffs also argue that AGFC's meetings with Dow Electronics, its devising a "dealer tracking program," and its preparation and distribution of the Private Label Credit Card Program manual were "efforts" by AGFC to control Direct Cable's activities. However, AGFC held these meetings beginning in October 1994 and devised the "dealer tracking program" in late 1994, each of which occurred after consummation of the sales at issue. Similarly, AGFC prepared the manual and sent it to its distributors in early 1995, again, after the sales at issue were consummated. Furthermore, the distributors, in turn, had discretion whether to provide the manual to retailers, and AGFC chose not to send the manual to any retailers, including Direct Cable. (Bousman's and Yodzis' depositions.) Therefore, the fact that AGFC held meetings and prepared and distributed the manual to Dow Electronics does not show any control or the retention of the right of control by AGFC over Direct Cable or Newman at the time of or prior to any of the sales at issue.

The well-settled principles of the Alabama Supreme Court that stand for the proposition that a finance company generally is not liable for a retailer's misconduct to consumers, as represented in *Mardis, Pope, Butler,* and *Kimbrel,* apply to all of the Plaintiffs' cases.

The cases cited by the Plaintiffs are all distinguishable. In other words, "[n]one of the[ ] actions [taken by AGFC] is inconsistent with the extending of credit by an institution." *See Pope,* 599 So.2d at 17 (quoting *Kimbrel,* 476 So.2d at 97). No reasonable trier of fact could find that AGFC controlled or retained the right to control the means or manner in which Direct Cable or Newman sold satellite systems to consumers at the time of or prior to any of the sales at issue. Therefore, AGFC did not have an agency relationship with or, as a principal, authorize or ratify the alleged misconduct of, Direct Cable or Newman.

■ Likewise, AGFC is not liable under the doctrine of apparent authority. The doctrine of apparent authority "is based upon the principal's holding the agent out to a third person as having the authority under which he acts." *Bird v. Auto Owners Ins. Co.,* 572 So.2d 394, 398 (Ala.1990) (internal quotations and citations omitted). Here, all of the Plaintiffs testified that they understood that Newman worked for Direct Cable and not for AGFC. None of the Plaintiffs submitted or pointed to any affirmative evidence that AGFC held out Direct Cable or Newman as its agent. As noted earlier, Alabama cases consistently hold that the appearance of a financing company's name on financing documents does not establish agency. Accordingly, AGFC's Motion for Summary Judgment is due to be GRANTED on these claims.

### 2. The Negligent and Wanton Training, Supervision and Sale Claims

■ Each of the Plaintiffs brings negligence and wanton conduct claims against AGFC, alleging negligent or wanton training, supervision, and sale of or by the individual handling the sale. In Alabama, "where there is no duty, there can be no negligence." *See, e.g., Albert v. Hsu,* 602 So.2d 895, 897 (Ala. 1992); *Blackmon v. First Real Estate Corp.,* 529 So.2d 955, 959 (Ala.1988). Importantly, a defendant does not have a duty to use reasonable care in training and supervising a person when the person "was not employed or associated with [the defendant] in such a way that a master/servant relationship exist-

ed." *See Perkins v. Dean,* 570 So.2d 1217, 1219 (Ala.1990) (citations omitted). Here, because the Plaintiffs have failed to show that Newman was AGFC's employee or agent, AGFC did not owe a legal duty to train or supervise him or owe a legal duty to any of the Plaintiffs with respect to Direct Cable's negotiations for sale of the satellite system. Therefore, the Plaintiffs' negligence claims fail.

Additionally, "in order for a party to be found guilty of wanton conduct, it must be shown that with reckless indifference to the consequences the party consciously and intentionally did some wrongful act or omitted some known duty, and that this act or omission produced the injury." *Sparks v. Alabama Power Co.,* 679 So.2d 678, 682 (Ala. 1996) (internal quotation and citation omitted). Here, the Plaintiffs do not appear to contend that AGFC committed some wrongful act to cause them injury. To the extent they are so contending, however, none of the Plaintiffs has submitted or pointed to affirmative evidence that AGFC committed any wrongful conduct resulting in injury to any of the Plaintiffs. Rather, the Plaintiffs seem to contend that AGFC is guilty of wrongful conduct because it omitted some legal duty to them. However, as discussed, AGFC owed no legal duty to them. Therefore, as with the Plaintiffs' negligence claims, the Plaintiffs' wanton conduct claims also fail. Accordingly, AGFC's Motions for Summary Judgment are due to be GRANTED on these claims.

### 3. *The Breach of Contract Claim*

 Each of the Plaintiffs brings a breach of contract claim against AGFC. Here, AGFC disputes that any contract between itself and any of the Plaintiffs was breached. AGFC submitted affirmative evidence that it provided financing to the Plaintiffs at an annual percentage rate of 15.96% pursuant to their financing arrangement. None of the Plaintiffs has submitted or pointed to affirmative evidence of any term of any contract which AGFC breached. Accordingly, AGFC's Motions for Summary Judgment are due to be GRANTED on this claim.

### 4. *The Conspiracy Claim*

 Each of the Plaintiffs brings a conspiracy claim against AGFC. A civil conspiracy is "a combination to accomplish an unlawful purpose or to accomplish a lawful end by unlawful means." *McLemore v. Ford Motor Co.,* 628 So.2d 548, 550 (Ala.1993) (citations omitted). Here, Hornbeck stated that AGFC did not have any agreements with Direct Cable or any of its employees. None of the Plaintiffs has submitted or pointed to any affirmative evidence that AGFC had an agreement or combination with Direct Cable or anyone else to defraud, mislead, or injure any of the Plaintiffs. There is simply no evidence from which a reasonable jury could find that AGFC conspired to defraud the Plaintiffs. Accordingly, AGFC's Motion for Summary Judgment is due to be GRANTED on this claim.

### B. *The Claims Against Dow Electronics*

#### 1. *The Fraud and Negligence Claims*

Each of the Plaintiffs also brings fraud and negligence claims against Dow Electronics based on alleged misconduct of Newman. As with their same claims against AGFC, the Plaintiffs argue that Dow Electronics is liable because Direct Cable or Newman was its agent.

 In support of their contention that an agency relationship existed between Dow Electronics and Direct Cable or Newman, the Plaintiffs point out that Dow Electronics had a "Private Label Merchant Agreement" with AGFC. In particular, the Plaintiffs observe that Dow Electronics used AGFC as its only source of retail financing, was responsible to AGFC for facilitating the financing of customers, made "care calls" to complaining customers pursuant to AGFC's recommendation, and "checked out" retailers before it selected them to offer AGFC credit. However, these facts, at most, only support an agency relationship between Dow Electronics and AGFC, and not between Dow Electronics and Direct Cable or Newman. Moreover, when Dow Electronics "checked out" retailers it did so to find out about their customers' credit histories to ensure that these customers would be reliable in paying AGFC for

credit. (Yodzis Deposition.) This was done for the benefit of Dow Electronics and AGFC.

The Plaintiffs also seem to rely on the fact that Dow Electronics had a Dealer Participation Agreement with Direct Cable to facilitate AGFC's financing of certain sales made by Direct Cable. However, even with this agreement, Direct Cable could purchase electronic equipment and arrange financing from wholesale distributors other than Dow Electronics. Moreover, Dow Electronics served merely as a conduit by which AGFC offered financing to Direct Cable's customers. If AGFC approved the credit, it transferred funds to Dow Electronics, which then transferred the funds to Direct Cable. (Yodzis Affidavits.) Therefore, the existence of the Dealer Participation Agreement does not show that Dow Electronics had an agency relationship with Direct Cable or Newman at the time of or prior to any of the sales at issue.

The Plaintiffs also observe that Dow Electronics prepared a "Presentation Packet" that it provided to retailers, including Direct Cable. The "Presentation Packet" included a section entitled "Sales Hints," which, in turn, included the following hint: "By stressing the low monthly payments, you are able to offer higher featured models or additional future sales for only '$— per month.'" However, evidence that Dow Electronics provided "hints," which are merely suggestive, to Direct Cable or Newman does not mean that Dow Electronics controlled or retained the right of control over Direct Cable or Newman at the time of or prior to any of the sales at issue.

In contrast, Dow Electronics did not hire any of Direct Cable's employees, including Newman, and did not have any input into or control over Direct Cable's hiring practices and decisions. Dow Electronics also did not train or instruct any of Direct Cable's employees regarding how to negotiate with consumers, how to sell satellite dishes, what to say to consumers, or how to otherwise conduct their day-to-day activities. Moreover, Dow Electronics did not participate in negotiations with potential customers, did not have any control over how long Direct Ca-

ble's employees worked or where they worked, and did not have any authority or power to hire, discipline, or fire Direct Cable's employees. In short, Direct Cable's employees neither worked for nor reported to Dow Electronics. Also, Dow Electronics did not learn of the alleged misrepresentations until well after the consummation of the sales at issue. (Yodzis Affidavits.)

Based on these established facts, the rationale of *Mardis, Pope, Butler,* and *Kimbrel* apply to all of the Plaintiffs' cases. The one case cited by the Plaintiffs, *Barlow,* is distinguishable for the same reasons as discussed with respect to AGFC. No reasonable trier of fact could find that Dow Electronics controlled or retained the right to control the means or manner in which Direct Cable or Newman sold satellite systems to consumers at the time of or prior to any of the sales at issue. Consequently, Dow Electronics did not have an agency relationship with or, as a principal, authorize or ratify the alleged misconduct of, Direct Cable or Newman.

■ With respect to the doctrine of apparent authority, all of the Plaintiffs testified that they understood that Newman worked for Direct Cable and not for Dow Electronics. None of the Plaintiffs submitted or pointed to affirmative evidence that Dow Electronics cloaked Newman with authority to act on its behalf. Therefore, the doctrine of apparent authority does not apply here. Accordingly, Dow Electronics' Motions for Summary Judgment are due to be GRANTED on these claims.

2. *The Negligent and Wanton Training, Supervision and Sale Claims*

■ As with AGFC, each of the Plaintiffs also brings wanton conduct and negligence claims against Dow Electronics, alleging negligent and wanton training, supervision, and sale of or by the individual handling the sale. Here, as discussed, the Plaintiffs have not shown that Dow Electronics had an agency relationship with Direct Cable or Newman at the time of or prior to the sales at issue. None of the Plaintiffs has submitted or pointed to affirmative evidence that Dow Electronics "consciously and intentionally did

some wrongful act or omitted some known duty, and that this act or omission produced the [Plaintiffs] injury." *See Sparks*, 679 So.2d at 682 (Ala.1996) (internal quotation and citation omitted). Consequently, the Plaintiffs' wanton conduct and negligence claims fail. Accordingly, Dow Electronics' Motions for Summary Judgment are due to be GRANTED on these claims.

### 3. *The Breach of Contract Claim*

Each of the Plaintiffs brings a breach of contract claim against Dow Electronics. Dow Electronics disputes that it breached any contract with any of the Plaintiffs. None of the Plaintiffs has submitted or pointed to affirmative evidence of any contract, let alone any breach, between Dow Electronics and any of them. Accordingly, Dow Electronics' Motions for Summary Judgment are due to be GRANTED on this claim.

### 4. *The Conspiracy Claim*

Each of the Plaintiffs also brings a conspiracy claim against Dow Electronics. Yodzis stated that Dow Electronics did not conspire with Direct Cable or anyone else to defraud, mislead, or injure any of the Plaintiffs. None of the Plaintiffs has submitted or pointed to any affirmative evidence that Dow Electronics had an agreement or combination with Direct Cable or anyone else to defraud, mislead, or injure any of the Plaintiffs. Accordingly, Dow Electronics' Motions for Summary Judgment are due to be GRANTED on this claim.

### V. CONCLUSION

The Plaintiffs have simply failed to come forward with any evidence which would allow a reasonable jury to find that either AGFC or Dow Electronics controlled or retained the right of control over Direct Cable or any of its employees, specifically including Newman, who handled the negotiations with the Plaintiffs. Neither is there any evidence of apparent authority. Therefore, there is no basis for holding either defendant liable for the wrongful acts of Newman. Neither is there any issue of material fact as to the other claims. The Defendants are entitled to judgment as a matter of law.

For the foregoing reasons, AGFC's and Dow Electronics' Motions for Summary Judgment are due to be GRANTED.

A separate Order will be entered in accordance with this Memorandum Opinion.

### ORDER AND JUDGMENT

For the reasons given in the Memorandum Opinion entered on this day, the Motions for Summary Judgment filed by the Defendants are GRANTED and it is hereby ORDERED as follows:

1. Judgment is entered in favor of the defendant, American General Financial Center, and against the plaintiff, Gerry W. Wilson.

2. Judgment is entered in favor of the defendant, Dow Electronics, Inc., and against the plaintiff, Gerry W. Wilson.

3. Costs are taxed against the plaintiff.

### ORDER AND JUDGMENT

For the reasons given in the Memorandum Opinion entered on this day, the Motions for Summary Judgment filed by the Defendants are GRANTED and it is hereby ORDERED as follows:

1. Judgment is entered in favor of the defendant, American General Financial Center, and against the plaintiffs, J.W. Nelson and Mary Frances Nelson.

2. Judgment is entered in favor of the defendant, Dow Electronics, Inc., and against the plaintiffs, J.W. Nelson and Mary Frances Nelson.

3. Costs are taxed against the plaintiffs.

### ORDER AND JUDGMENT

For the reasons given in the Memorandum Opinion entered on this day, the Motions for Summary Judgment filed by the Defendants are GRANTED and it is hereby ORDERED as follows:

1. Judgment is entered in favor of the defendant, American General Financial Center, and against the plaintiff, Martin Johnson.

2. Judgment is entered in favor of the defendant, Dow Electronics, Inc., and against the plaintiff, Martin Johnson.

3. Costs are taxed against the plaintiff

### ORDER AND JUDGMENT

For the reasons given in the Memorandum Opinion entered on this day, the Motions for Summary Judgment filed by the Defendants are GRANTED and it is hereby ORDERED as follows:

1. Judgment is entered in favor of the defendant, American General Financial Center, and against the plaintiff, Anthony Prescott.

2. Judgment is entered in favor of the defendant, Dow Electronics, Inc., and against the plaintiff, Anthony Prescott.

3. Costs are taxed against the plaintiff.

### ORDER AND JUDGMENT

For the reasons given in the Memorandum Opinion entered on this day, the Motions for Summary Judgment filed by the Defendants are GRANTED and it is hereby ORDERED as follows:

1. Judgment is entered in favor of the defendant, American General Financial Center, and against the plaintiff, Harlan Burton.

2. Judgment is entered in favor of the defendant, Dow Electronics, Inc., and against the plaintiff, Harlan Burton.

3. Costs are taxed against the plaintiff.

### ORDER AND JUDGMENT

For the reasons given in the Memorandum Opinion entered on this day, the Motions for Summary Judgment filed by the Defendants are GRANTED and it is hereby ORDERED as follows:

1. Judgment is entered in favor of the defendant, American General Financial Center, and against the plaintiff, Lanier Burton.

2. Judgment is entered in favor of the defendant, Dow Electronics, Inc., and against the plaintiff, Lanier Burton.

3. Costs are taxed against the plaintiff.