Shelly **PERRY**, etc., Plaintiff,

v.

**HOUSEHOLD RETAIL SERVICES, INC., et al., Defendants.**

Civil Action No. 95–D–45–N.

United States District Court, M.D. Alabama, Northern Division.

Aug. 5, 1996.

C. Knox McLaney, III, Angela L. Kimbrough, McLaney & Associates, Montgomery, AL, James O. Latturner, Edelman & Combs, Chicago, IL, Lynn W. Jinks, III, Jinks, Smithart, Jackson & Daniel, L.L.C., Union Springs, AL, Cathleen M. Combs, Daniel A. Edelman, Charles E. Petit, Edelman & Combs, Chicago, IL, for plaintiff.

John E. Goodman, Norman Jetmundsen, Jr., Charles Keith Hamilton, Julie Scharfenberg Elmer, Andrew J. Noble, III, Bradley, Arant, Rose & White, Birmingham, AL, for Household Retail Services, Inc., Household Intern., Inc.

Edward P. Turner, Jr., Halron W. Turner, Turner, Onderdonk, Kimbrough & Howell, P.A., Chatom, AL, for Best Reception Systems, Inc.

Home Video Electronics, Inc., Douglasville, GA, pro se.

Norman Jetmundsen, Jr., Charles Keith Hamilton, Bradley, Arant, Rose & White, Birmingham, AL, for Household Bank (Illinois), N.A.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is defendant Household Retail Services, Inc.'s motion for summary judgment filed November 3, 1995.[1]  Also be-

---

1. Household Retail Services, Inc. also filed a motion for summary judgment on July 17, 1995, pertaining to the allegations contained in the original complaint.  However, the original com-

fore the court is the plaintiff's motion to strike, filed December 7, 1995, and Household Retail Services, Inc.'s motion to strike, filed February 23, 1996. In ruling on said motions, the court has considered the parties' respective briefs, as well as the replies and responses thereto. After careful consideration of the arguments of counsel, the relevant case law and the record as a whole, the court finds that the defendant's motion for summary judgment is due to be denied. The court also finds that the parties' respective motions to strike are due to be denied as moot.

## JURISDICTION

Jurisdiction is proper under 28 U.S.C. § 1331 because the amended complaint alleges violations of the Federal Truth-in-Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA") and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ("RICO"). The plaintiff also alleges violations of Alabama and Illinois statutory and common law. These purported violations transpired during the same transaction and occurrence as the alleged constitutional deprivations; therefore, the court may assert supplemental jurisdiction over the plaintiff's state law claims. *See* 28 U.S.C. § 1367(a).[2] Personal jurisdiction and venue are not contested.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the

Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific

---

plaint was replaced by the amended complaint. Therefore, the court, in this opinion, will deny said motion as moot.

**2.** Pursuant to § 1367,

"... in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction

over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

28 U.S.C. § 1367(a).

facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356; *see also Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

### FINDINGS OF FACT

This action seeks relief from the practices of Household Retail Services, Inc. ("HRSI"), Household Bank (Illinois), N.A. ("HBI"), Household International, Inc. ("HI"), Best Reception Systems, Inc. ("Best") and Home Video Electronics, Inc. ("Home Video") concerning the financing of satellite television dishes. As a result of these practices, consumers allegedly were deprived of critical information to which they were entitled under TILA.

The plaintiff, Shelly Perry, purchased a satellite dish system from defendant Home Video in August, 1994. Pl.'s Amend.Compl. at ¶¶ 11–13 & Exh. A thereto. The plaintiff entered into an agreement with defendant Best, a distributor of satellite dish equipment for whom Home Video is one of its dealers, to finance the purchase of the satellite dish, a warranty and a subscription to a magazine for satellite dish owners. *Id.* at ¶¶ 11–14 & Exhs. A & C thereto.

The dishes were financed through private label credit cards issued by a joint venture between HRSI and HBI, subsidiaries of HI. Essentially, HRSI has purchased accounts from various Best dealers and purchased the plaintiff's account from Home Video. This private label credit card, entitled a "Power-line Card," purports to be a "credit card" for purchases of products and services only from Best distributors.

In connection with the transaction, Home Video, as the retail dealer, had the plaintiff execute a standardized credit application form, a document entitled "Retail Installment Credit Agreement." The Retail Installment Credit Agreement classified the transaction as an "open end credit arrangement." *Id.* at 14–23 & Exhs. A & C thereto. However, the plaintiff contends that his account with Home Video was, in fact, a closed-end credit arrangement and that the defendants did not provide him all disclosures required for such loans. *Id.* at ¶¶ 23 & 49. Specifically, the plaintiff contends that he was not provided with the following material items of information which are required to be disclosed in closed-end credit transactions: (1) the number of payments; (2) the amount of each monthly payment; (3) the amount financed; (4) the total finance charge; (5) the total of payments; and (6) the total sales price.

In Count I, the plaintiff seeks to establish a claim under TILA, based upon alleged non-disclosure of certain information required in a closed-end credit arrangement. The plaintiff asserts that "[b]y employing open end credit disclosures with respect to transactions not legitimately classifiable as open end, the defendants violated TILA § 128, 15 U.S.C. § 1638 and the implementing regulations, 12 C.F.R. § 226.17–18."

In Count II, the plaintiff seeks to establish a claim under RICO, by asserting that HRSI and co-defendants HI and HBI constitute an "enterprise," the affairs of which they conduct through a pattern of mail fraud. The plaintiff specifically alleges that the constituents of this alleged enterprise "fraudulently concealed material information regarding finance charge, total of payments, term of financing agreement, number of payments, amount of each monthly payment, total sale price" from purchasers of satellite systems. The plaintiff further states that the mails were used for (1) sending documents necessary for the origination and servicing of "Retail Installment Credit Agreements" to hundreds of debtors; (2) sending monthly statements to debtors; and (3) receive money from debtors. The plaintiff ar-

gues that he "was injured in [his] business and property by being "obligated to pay improperly disclosed finance charges" as a result of this alleged RICO violation.

The plaintiff argues in Count III that the defendants "engaged in unfair and deceptive acts and practices by failing to furnish . . . the additional information that would have been furnished had defendants made closed end credit disclosures instead of open end credit disclosures." According to the plaintiff, this failure amounts to a violation of the *Illinois Consumer Fraud and Deceptive Business Practices Act*, 815 ILCS 505/1 *et seq.* ("Illinois Consumer Fraud Act").

Finally, the plaintiff contends in Count IV that the "[d]efendants, through their agents, concealed and fraudulently failed to disclose to [the plaintiff] . . . the nature of the credit he was applying for, the cost of the credit and other information required by TILA for closed end transactions."

After carefully analyzing the plaintiff's amended complaint, it is clear to the court that the main issue to be resolved herein is whether the plaintiff's account with Home Video is an open-end credit plan. If the answer is in the positive then HRSI will be entitled to summary judgment on all of the plaintiff's claims. HRSI also contends that, even if the disclosures were improper, they are not improper on the face of the document, and therefore, HRSI as an assignee cannot be held liable for the TILA violation. HRSI further contends that it is not, as a matter of law, subject to regulation under the Illinois Consumer Fraud Act. Finally, HRSI asserts that it cannot be liable under Alabama fraud law because Best was not its agent.

## DISCUSSION

### I. Motions to Strike

■ Before proceeding to the issues presented in the summary judgment motion, the court will first address the plaintiff's motion to strike, filed December 7, 1995, and HRSI's motion to strike, filed February 23, 1996. The plaintiff seeks to strike the affidavit of Dan J. Morgan attached as exhibit D to HRSI's appendix to its memorandum in support of its motion for summary judgment. On the other hand, HRSI moves the court to strike certain affidavits and statements attached to the "plaintiff's supplemental response to HRSI's motion for summary judgment as noted in footnote 5 of plaintiff's response." The court finds that both motions to strike are due to be denied as moot because the materials mentioned therein do not alter the court's determination of HRSI's motion for summary judgment. The court will next address HRSI's motion for summary judgment.

### II. Count I—TILA

#### A. *Reasonableness of Repeat Transactions*

■ One of the main purposes of TILA is to ensure that consumers have adequate information to choose credit wisely. *See Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980). In fact, 15 U.S.C. § 1601(a) states that "[i]t is the purpose of this title to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." With this principle in mind, Regulation Z defines open-end credit as

. . . meaning consumer credit extended by a creditor under a plan in which

(i) The creditor reasonably contemplates repeated transactions;

(ii) The creditor may impose a finance charge from time to time on an outstanding unpaid balance; and

(iii) The amount of credit that may be extended to the consumer during the term of the plan (up to any limit set by the creditor) is generally made available to the extent the outstanding balance is repaid.

12 C.F.R. § 226.2(a)(20). All three of the aforementioned criteria must be met for a plan to be classified as open-end credit. FRB Staff Commentary § 226.2(a)(20)–1. On the other hand, closed-end credit is defined simply as "consumer credit other than open-end credit as defined in this section." *Id.* at § 226.2(a)(10). Here, the plaintiff does not dispute that his account with Home Vid-

eo satisfies the latter two elements of the open-end credit definition, but instead, he argues that it was not reasonable for Home Video to contemplate repeat transactions under the plaintiff's account. Pl.'s Amend. Compl. at ¶¶ 29–30.

■ The court is guided by the Federal Reserve Board's Official Staff Commentary on Regulation Z which states that each open-end plan

> must be independently measured against the definition of "open-end credit," regardless of the terminology used in the industry to describe the plan. The fact that a particular plan is called an open-end real estate mortgage, for example, does not, by itself, mean that it is open-end credit under [Regulation Z].

FRB Staff Commentary to Regulation Z § 226.2(a)(20)–6. Moreover, Congress intended to "require 'closed-end' disclosures where an initial transaction is the purchase of infrequently purchased items such as a home improvement or automobile" and in other situations where it is not reasonable to conclude that future transactions are likely. S.Rep. No. 73, 96th Cong., 2d Sess., at 2, *reprinted at* 1980 U.S.C.C.A.N. 280, 288. The test for whether a loan is appropriately classified as "open-end" is whether or not the loan is "likely to be a one-time credit extension." *Id.* The Federal Reserve Board's Official Staff Commentary on Regulation Z also states with regard to the "repeated transactions" criterion that "the credit plan must be usable from time to time and the creditor must legitimately expect that there will be repeat business rather than a one-time credit extension." 12 C.F.R. Pt. 226, Supp. I. However, the interpretations go on to state that "[t]he fact that a particular consumer does not return for further credit extensions does not prevent a plan from having been properly characterized as open-end." *Id.*

■ Here, HRSI has presented evidence which would tend to define the loan transaction between the parties as open-ended. However, the plaintiff has also presented evidence which would tend to define the loan transaction between the parties as closed-ended. Because disputed issues of fact exist, the court finds that whether it was reasonable for Home Video to reasonably contemplate repeat transactions is a question for the trier of fact at trial to decide, where the trier of fact can make choices as to credibility and weight of the evidence. Consequently, HRSI's motion for summary judgment is denied to the extent that it argues that it was reasonable for Home Video to anticipate repeated transactions under the plaintiff's account.

### B. *Liability as Assignee*

■ HRSI next contends that as an assignee it can only be liable for any TILA violations that were apparent on the face of the agreement between the plaintiff and Home Video. *See* 15 U.S.C. § 1641(a).[3] In light of this, HRSI asserts that the agreement demonstrates that the parties intended to, and did, enter into an open-end credit arrangement, and there is nothing that was shown to HRSI to lead to any other conclusion. Therefore, HRSI contends that it cannot be liable for the alleged TILA violations.

However, the plaintiff contends that HRSI is far more than just an "assignee" in this transaction. The plaintiff asserts that HRSI and other Household entities are active participants in a scheme to evade TILA disclosure requirements. In support thereof, the plaintiff notes that the "non-agent" agreements between Best and Home Video (Pl.'s Exh. C) and Best and HRSI (Pl.'s Exh. D) reflect HRSI's control of the credit process, including HRSI's control over granting and denying credit. *See* Pl.'s Exh. C at 1; Pl.'s Exh. D § 2; *see also* Zacharias Dep. at 16–17. Moreover, the plaintiff further contends that even if HRSI is just an assignee, 15

---

3. Section 1641(a) states in pertinent part:
   (a) Except as otherwise specifically provided ..., any civil action for a violation of this subchapter or proceeding under [15 *U.S.C.* § 1607] which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment is involuntary. 15 U.S.C. § 1641(a).

U.S.C. § 1640(c) states that "an error of legal judgment with respect to a person's obligations under this title" does not relieve either a creditor or assignee of liability. Based on the foregoing, the plaintiff argues that the question is whether HRSI received documents from which one who is familiar with TILA's requirements could have determined that the appropriate closed-end TILA disclosures had not been made.

The court is highly persuaded by the plaintiff's contention that HRSI surely was aware of all the facts and circumstances of its credit policy, and therefore, the defects were apparent on the face of the agreement to HRSI. In fact, companies that regularly accept assignments from certain retailers can be considered creditors under § 1641. *Marcano v. Northwestern Chrysler–Plymouth Sales, Inc.*, 550 F.Supp. 595, 600 (N.D.Ill. 1982) (citing *Ford Motor Credit Co. v. Cenance*, 452 U.S. 155, 101 S.Ct. 2239, 68 L.Ed.2d 744 (1981)). Moreover, the retail installment contract explicitly subjects any holder to all claims and defenses which the consumer has against the seller. Specifically, the contract states:

> ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

Pl.'s Exh. C attach. to Amend.Compl. Alabama courts have recognized the validity of such claim preservation provisions in consumer credit contracts, and allowed holders to be held vicariously liable to consumers/debtors for claims provable against the sellers of goods. *Gill v. Fidelity Financial Servs., Inc.*, 631 So.2d 913, 914 (Ala.1993); *see also Cox v. First Nat. Bank of Cincinnati*, 633 F.Supp. 236, 239 (S.D.Ohio 1986) (similar finding under Ohio law); *Armstrong v. Edelson*, 718 F.Supp. 1372 (N.D.Ill.1989). Because the TILA violation alleged herein is a valid claim against Home Video, the seller, it is also a valid claim against HRSI, the assignee, by virtue of the claim preservation provision in the contract. *See Cox*, 633 F.Supp. at 239 (similar analysis and finding). Based on the foregoing, the court finds that HRSI's status as an assignee does not shield it from liability. Consequently, the court finds that HRSI's motion for summary judgment is due to be denied to the extent it seeks to shield HRSI from liability as an assignee.

## III. Count II—RICO

HRSI contends that RICO liability in this case ultimately depends upon whether it can be held liable under TILA. Hence, HRSI is entitled to summary judgment on the RICO claim if no issues of material fact remain on the TILA claim. Since the court has previously determined that disputed issues of material fact exist concerning the TILA claim, the court finds that HRSI's motion for summary judgment is due to be denied concerning the RICO claim asserted against it.

## IV. Count III—Illinois Consumer Fraud Act

With regard to the claims brought pursuant to the Illinois Consumer Fraud Act, HRSI contends that choice of law principles prevent the application of the Illinois Consumer Fraud Act to HRSI because the transaction at issue occurred entirely within the state of Alabama. However, the court finds that it need not reach HRSI's choice of law analysis because the Illinois Consumer Fraud Act and the Alabama law of fraud by suppression and fraud by deceit do not conflict. For instance, under the Illinois Consumer Fraud Act, lenders must disclose all material information to prospective borrowers. 815 ILCS 505/2, 2F. This is an affirmative duty. *Crowder v. Bob Oberling Enterprises*, 148 Ill.App.3d 313, 101 Ill.Dec. 748, 752, 499 N.E.2d 115, 119 (1986) ("[u]nder the Act the omission of any material fact is deceptive conduct"). Material omissions are actionable even if no duty to disclose the omitted information, other than that imposed by the Illinois Consumer Fraud Act itself, exists. *Ce-*

*lex Group, Inc. v. Executive Gallery, Inc.,* 877 F.Supp. 1114, 1129 (N.D.Ill.1995). Likewise, under the Alabama law of fraud by suppression and fraud by deceit, lenders must disclose all material information to prospective borrowers. Ala.Code §§ 6–5–102 & 6–5–104(a). "Deceit" includes "the suppression of a fact by one who is bound to disclose it or who gives information or other facts which are likely to mislead for want of communication of that fact." Ala.Code § 6–5–104(b)(3). However, the court notes that the plaintiff can recover the same element of damages only once; thus, the issue of double recovery will arise if the plaintiff prevails on both Counts III and IV at trial.

■ The court's analysis of Count III does not end here because the court must determine whether the Illinois Consumer Fraud Act applies to transactions where consumers reside outside Illinois. In *Swartz v. Schaub,* 818 F.Supp. 1214 (N.D.Ill.1993), the court held that the Illinois Consumer Fraud Act was only intended to protect Illinois consumers. However, in *Cirone–Shadow v. Union Nissan of Waukegan,* No. 94–C–6723, 1995 WL 238680 (N.D.Ill. April 20, 1995), the court specifically rejected this holding and held that the Act does not specifically limit its scope to the protection of Illinois residents. Specifically, the court in *Cirone–Shadow* noted that the Illinois Consumer Fraud Act "prohibits fraud 'in the conduct of any trade or commerce.'" *Id.* at *4 (citing 815 ILCS 505/2). The court went on to cite the Act's definition of "trade" or "commerce," which states:

> the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State.

*Id.* at *5 (quoting 815 ILCS 505/1(f)). Relying on *Fry v. UAL Corp.,* 136 F.R.D. 626, 637 (N.D.Ill.1991), the court found that the above-quoted statute did not limit its scope to the protection of Illinois residents.

The Illinois Consumer Fraud Act has been applied to several other cases involving Illi-nois corporations, but not Illinois consumers. *See, e.g., Martin v. Heinold Commodities,* 117 Ill.2d 67, 109 Ill.Dec. 772, 510 N.E.2d 840 (1987); *Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.,* 749 F.Supp. 869 (N.D.Ill. 1990); *Gordon v. Boden,* 224 Ill.App.3d 195, 166 Ill.Dec. 503, 586 N.E.2d 461 (1991), *appeal denied,* 144 Ill.2d 633, 169 Ill.Dec. 141, 591 N.E.2d 21 *cert. denied,* 506 U.S. 907, 113 S.Ct. 303, 121 L.Ed.2d 226 (1992). In *Martin,* for example, the court held that Illinois law—both the Illinois Consumer Fraud Act and the Illinois law of fiduciary responsibility—would be applied to all members of the class because Illinois had a substantial interest in seeing that companies operating in the state operate lawfully. *Martin,* 109 Ill.Dec. at 779, 510 N.E.2d at 847. For the foregoing reasons, the court finds that HRSI's motion for summary judgment relating to Count III is due to be denied.

## V. Count IV—Alabama Law of Fraud by Suppression and Deceit

■ Regarding Count IV, HRSI contends that under Alabama law, the plaintiff cannot recover against HRSI for any alleged suppression by the seller of the satellite system because HRSI is not liable for the actions of the person who sold him the satellite dish. In other words, HRSI asserts that Alabama law clearly provides that such a salesman is not the agent of a company in HRSI's position. On the other hand, the plaintiff contends that there are disputed issues of fact as to whether an agency relationship existed between Best and HRSI, HBI and HI. Specifically, the plaintiff states that Best acted as an agent for HRSI, HBI and HI with respect to assisting Home Video's customers obtain financing for purchases of satellite dishes and related equipment. The plaintiff contends that Best entered into agreements with HRSI, HBI and HI, pursuant to which Best solicited and processed applications for financing in exchange for service fees.

HRSI attempts to avoid liability as a principal by claiming that it "does not control the actions of the sellers." HRSI's Mem. in Supp. of Mot. for Summ.J. at 22. In support thereof, HRSI relies on *Mardis v. Ford Mo-*

*tor Credit Co.,* 642 So.2d 701 (Ala.1994). However, the court finds that HRSI's reliance on *Mardis* is misplaced. In *Mardis,* the Supreme Court of Alabama found that Ford Motor Company, an assignee and financer, was not liable to the plaintiff for the seller's misrepresentation of the model year of a vehicle sold to the plaintiffs and financed by Ford Motor Credit. The court reads *Mardis* as holding that without indicia of control over the specific aspect of a sale at issue, an assignee/creditor is not liable under Alabama law for fraud committed by the seller. *See id.* at 704–05. Here, however, the terms of the parties' agreement indicate that HRSI, HBI and HI had the right to control significant aspects of Best's performance concerning the processing, issuance and maintenance of the "credit cards" at issue here. For example, the agreement provides in part that:

> BRSI [Best Retail Systems, Inc.] agrees to accept from Household and to transmit to Sellers the proceeds of any and all contracts and Slips purchased by Household from the Sellers. BRSI shall obtain from sellers written authorization satisfactory to Household, designating BRSI as agent to accept, receive and transmit to Sellers the proceeds from the purchase of any Contract or Slip.

Best's Exh. D attach to Best's Mot. for Summ.J. at 2 (emphasis added).

 Agency is to be determined "by the facts and not by how the parties characterize the relationship." *Butler v. Aetna Finance Co.,* 587 So.2d 308, 311 (Ala.1991). Moreover, if the evidence is in dispute, then agency is a question for the trier of fact. *Crowe v. Hertz Corp.,* 382 F.2d 681 (5th Cir.1967); *John R. Cowley & Bros., Inc. v. Brown,* 569 So.2d 375 (Ala.1990); *Sea Calm Shipping Co., S.A. v. Cooks,* 565 So.2d 212 (Ala.1990). In light of these principles and based on the facts before the court, the court finds that a reasonable trier of fact could find that an agency relationship existed between Best and its co-defendants. Accordingly, HRSI's motion for summary judgment relating to Count IV is due to be denied.

**CONCLUSION**

For the foregoing reasons, it is CONSIDERED and ORDERED that Household Retail Services, Inc.'s motion for summary judgment, filed November 3, 1995, be and the same is hereby DENIED.

It is further CONSIDERED and ORDERED that Household Retail Services, Inc.'s motion for summary judgment, filed July 17, 1995, be and the same is hereby DENIED AS MOOT.

It is further CONSIDERED and ORDERED that the plaintiff's motion to strike, filed December 7, 1995, be and the same is hereby DENIED AS MOOT.

It is further CONSIDERED and ORDERED that Household Retail Services, Inc.'s motion to strike, filed February 23, 1996, be and the same is hereby DENIED AS MOOT.