**Odester ANGLIN, Plaintiff,**

v.

**HOUSEHOLD RETAIL SERVICES, INC.; Household Bank (Illinois), N.A.; Household Bank (Nevada), N.A., Defendants.**

**Civ.A. No. 97–A–67–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Aug. 20, 1998.

Donald J. McKinnon, Don McKinnon's Law Office, Eufaula, Emily H. Nelson, Page A. Poerschke, Pittman, Hooks, Dutton & Hollis, P.C., Birmingham, AL, for Odester Anglin, plaintiffs.

James L. Martin, Eufaula, Julie Scharfenberg Elmer, Andrew J. Noble, III, Fred M Haston, III, Bradley, Arant, Rose & White, Birmingham, AL, P. Richard Hartley, Hartley & Hickman, Greenville, for Household Retail Services, Inc., Fictitious Defendant(s), A, B and C, Household Bank National Association, Household Bank (Illinois), N .A., Household Bank National Association, Household Bank.(Nevada), N.A., defendants.

## MEMORANDUM OPINION

ALBRITTON, District Judge.

### I. INTRODUCTION

This case is before the court on a Motion for Summary Judgment filed by the Defendant, Household Retail Services, Inc. on November 21, 1997 and on a Motion for Summary Judgment filed by Household Retail Services, Household Bank (Nevada), N.A. and Household Bank (Illinois), N.A. on July 6, 1998 (collectively "Household Defendants") and on Household Retail Services's Motion to Strike filed on December 22, 1997.

The Plaintiff, Odester Anglin ("Anglin") originally filed her Complaint in the Circuit Court of Barbour County, Alabama on December 16, 1996. In her Complaint, Anglin

alleges that the Household Defendants engaged in fraud (Count I), deceit (Count II), misrepresentation (Count III), negligent hiring, training, and supervision (Count IV), wanton hiring, training, and supervision (Count V), and conspiracy to defraud (Count VI).

On January 16, 1997, the Household Defendants filed a Notice of Removal, stating that there was complete diversity of the parties and that the requisite jurisdictional amount was exceeded by Anglin's claims, and that this court had jurisdiction because the instant case was related to the bankruptcy proceedings of National Wireless Cable Systems, Inc. No Motion for Remand was filed.

On April 8, 1997, Anglin filed a Motion to Dismiss National Wireless Cable Systems, Inc., which was granted by this court on April 22, 1997.

On December 1, 1997, this court granted Anglin's Motion to Amend her Complaint so as to add Household Bank (Illinois), N.A. to the original Complaint. On December 5, 1997, Anglin filed a Second Amendment to the Complaint, adding Household Bank (Nevada), N.A. as a defendant.[1]

## II. FACTS

The submissions of the parties establish the following facts:

Household Retail Services is a private label credit card provider, which means that they set up and manage private label credit card programs for retailers and sellers in the marketplace. Such credit cards are accessible only with the specific retailer or entity for which the card was developed. Household Retail Services provided private label credit card financing for the satellite dish industry.

Anglin purchased a satellite system from a salesman named James Love who worked for National Wireless Cable Systems, Inc. Anglin contends that James Love told her that she would pay a specified amount of money for a certain number of years and that her satellite system would be paid off at the end of this period. In order to purchase the satellite system, Anglin opened a revolving credit account. Anglin contends that James

Love told her that $3500 was the total cost of her purchase and did not explain that interest paid in order to finance the purchase would be in addition to that amount. Her claims in this case stem from what she contends was fraudulent conduct on the part of James Love.

## III. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–24, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538

---

1. Anglin has requested oral argument, but the court finds that the parties' briefs adequately address the issues and there is no need for oral argument.

(1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## IV. *DISCUSSION*

### A. Fraud and Deceit Claims

Anglin has alleged that James Love made fraudulent representations, or failed to make full disclosures, and that the Household Defendants are responsible for these actions. Anglin argues that James Love was acting as an agent for the Household Defendants so that his fraudulent actions may be attributed to them.

The basis of Household Retail Services's separate Motion for Summary Judgment is its contention that Anglin named the wrong defendant by suing Household Retail Services. Household Retail Services points to the Affidavit of Susan Nemec, in which she states that an account was opened for Anglin with Household Bank (Illinois) National Association and that the account has been assigned to Household Bank (Nevada) National Association. Susan Nemec Affidavit at ¶ 4. Susan Nemec also stated that Anglin does not have an account with Household Retail Services, nor has she had an account with Household Retail Services at any relevant time. *Id.* at ¶ 5.

■ Anglin states that there is evidence that Household Retail Services was an active participant in alleged wrongful conduct and that it conspired with others to defraud Anglin. Anglin points to evidence that she was instructed to make her payment checks payable to "HRS," to send payment to "HRS," and if there were any billing errors, to contact "HRS." [2] Anglin argues that the reference to HRS is clear and that Household Retail Services has failed to show that it is not the entity referred to in the billing statements.

Anglin also refers to the deposition testimony of Craig Myers, former Assistant Vice President of Household Retail Services, in which he stated that Household Retail Services received a federal bank charter and required distributors to provide dealers with a Household Retail Services application when a program came up under the charter. Myers Deposition One at pages 44–45. Myers also stated that Household Retail Services reviews applications and then either approves or declines the customer for credit, and then informs the distributor of the decision and what the credit line would be. Credit would then be extended and the dealer would follow through on arrangements to install the satellite system. *Id.* at 72–73. Myers also explained the advantages of having programs under a national bank charter, rather than individual state charters.

■ Household Retail Services responds that Anglin's evidence is not sufficient to establish that there is a connection between Household Retail Services and one of the banks, but that even if Anglin's evidence creates a question of fact as to whether Household Retail Services is involved in billing of Anglin's account, this does not establish that Household Retail Services was involved in any of the transactions which form the basis of Anglin's fraud allegation. In other words, Anglin's theory is that evidence that Household Retail Services was interrelated with either Household Bank (Illinois) N.A. or Household Bank (Nevada), N.A. allows for the inference to be drawn that Household Retail Services was involved in

---

**2.** Anglin has offered some evidence from another case involving these defendants which is the subject of the Motion to Strike. The court has not considered documentary evidence from the other case, so the Motion to Dismiss is due to be Denied as Moot, on that ground. To the extent that Household Retail Services also intends to move to strike deposition testimony of Craig Myers from another case because it is hearsay, the court concludes that this evidence of a sworn statement by Myers may still be considered in the context of the summary judgment motion. *See Matter of Melton,* 39 B.R. 762 (Bkrtcy.N.D.Ga.1984)(deposition testimony based on personal knowledge meets the requirements for admissibility of affidavits under Rule 56 and is considered for summary judgment); *Tormo v. Yormark,* 398 F.Supp. 1159 (D.N.J. 1975)(same).

fraud or conspiracy to defraud. Anglin has cited no authority in support of this theory. The court agrees with Household Retail Services that evidence which merely indicates that there is a relationship between two financial entities does not mean that an inference can be drawn that Household Retail Services was involved in the allegedly fraudulent actions of James Love.

The Household Defendants also argue that, in addition to there being no evidence of Household Retail Services's involvement in the alleged improper conduct, there is insufficient evidence from which to conclude that the Household Defendants can be held responsible under respondeat superior by virtue of an agency relationship. Anglin's response is that there is evidence that the Household Defendants had authority in the satellite purchase agreement into which Anglin entered. Not only is this Anglin's position with regard to the Motion for Summary Judgment filed by Household Retail Services, but also, in response to the separately filed summary judgment motion by Household Retail Services, Household Bank (Nevada), N.A. and Household Bank (Illinois), N.A., Anglin has argued that all of the Household Defendants were in an agency relationship with James Love. Accordingly, the court will address together Anglin's evidence of an agency relationship in relation to all of the Household Defendants.

 Under Alabama law, a finance company is generally not liable for a retailer's misconduct to customers, without further evidence of an agency relationship. *Wilson v. Direct Cable Technologies,* 964 F.Supp. 1548 (M.D.Ala.1997). Merely because a finance company/retailer relationship exists, however, does not preclude a finding of an agency relationship if there is evidence to support such a finding. *See Perry v. Household Retail Services, Inc.,* 953 F.Supp. 1370 (M.D.Ala.1996). Agency is to be determined by the facts and not by how the parties characterize the relationship. *Butler v. Aetna Finance Co.,* 587 So.2d 308 (Ala.1991). The key under Alabama law is that there must be an indicia of control over the specific aspect of a sale at issue in order to hold a creditor liable for fraud committed by the seller. *Perry,* 953 F.Supp. at 1377.

.The Household Defendants point to Anglin's testimony in which she states that James Love was the only person who made any alleged misrepresentation to her about her satellite purchase. Anglin Deposition, pages 64–64, 98–99. The Household Defendants also offer an Affidavit to establish that James Love has never been an employee, agent, servant, or representative of any of the Household Defendants and that none of the Household Defendants exercised a right of control over the manner in which James Love performed his job. Affidavit of Frank Nardi. According to the Household Defendants, Household Bank (Illinois) N.A. financed Anglin's purchase of the satellite equipment and Household Bank (Nevada) N.A. took an assignment of Anglin's account, but neither played any role in the sale of the satellite system. Nardi Affidavit. The Household Defendants maintain that there is no evidence that any of the Household Defendants retained or exercised a right of control over the way James Love, or his employer, National Wireless Cable Systems, sold satellite systems.

The Household Defendants urge this court to find that the facts in this case are so similar to those in *Wilson v. Direct Cable Technologies,* 964 F.Supp. 1548 (M.D.Ala. 1997), that this court must conclude that there is no evidence of an agency relationship between James Love and the Household Defendants. In *Wilson,* this court found that the facts of the case were distinguishable from Alabama decisions holding a financing company liable because the plaintiffs could pay cash or choose from several financing sources, such as a bank or a personal credit card; the satellite equipment was sold from a number of distributors, each having one or more sources of financing; the finance company did not have a contract with the retailer or its employee, and the finance company did not train these employees how to negotiate with consumers, how to sell satellite dishes, what to say to consumers, and how to otherwise conduct their day-to-day activities at the time prior to the sale at issue. *Wilson,* 964 F.Supp. at 1554. This court also noted that the finance company did not participate in negotiations with customers, did not have control over how long the retailer employees

worked, or where they worked, or have the ability to discipline, hire or fire these employees. *Id.* This court also found it significant that the finance company did not share any profits with the retailer, nor did it know of the alleged misrepresentations until after the sales were consummated. *Id.* Measures taken by the finance company to combat alleged misconduct by retailers were not relevant because they were not taken at the time of or prior to any of the sales at issue. *Id.* at 1555.

Anglin states that under either of two alternative theories the Household Defendants can be held accountable for misrepresentations made by a local dealer; either the Household Defendants were the principal of the dealer or they were conspiring with the dealer and distributor to defraud Alabama buyers of satellite systems.

■ Anglin makes several assertions about the Household Defendants, including the allegation that the Household Defendants learned that the plan was being misrepresented as an installment loan plan, and that the Household Defendants sought to remind dealers and salespersons that they could not represent the plan as an installment loan plan and issued a manual and video for distribution, but did not take effective remedial measures. Although these and other allegations have been made by Anglin, the court has been cited to no Affidavit or Deposition in support of these asserted facts. In fact, the portion of Anglin's brief in which these statements are located has no citation to any deposition or affidavit at all. *See* Anglin's Brief in Opposition pages 11–13. Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. Therefore, the court will not consider any of purported facts which are merely asserted, but will instead only consider facts supported by evidence to which the court has been pointed.

Anglin's failure to cite to supporting evidence is especially significant with respect to Anglin's argument based on *Union Mortgage Company, Inc. v. Barlow,* 595 So.2d 1335 (Ala.1992). Anglin states that the facts in this case fall within the holding of *Barlow* because evidence of knowledge about improper actions on the part of the seller supports the theory that the finance company participated in the fraud because it took no direct action to prevent what it later claimed was a violation of its practices. Although Anglin asserts that the Household Defendants similarly had knowledge and failed to take action, Anglin has not pointed this court to testimony in support of these allegations. At most, Anglin has pointed to some testimony by Myers that he had heard of complaints from consumers. *See* Myers Deposition Two at page 75. There is no time-frame established for this knowledge, nor is there evidence in the record as to any purported action taken by the Household Defendants with regard to these complaints or the timing of such action. As this court noted in *Wilson,* actions taken after the transaction at issue do not establish that the finance company can be held liable for the salesperson's alleged misconduct. *Wilson,* 964 F.Supp. at 1554. Therefore, although Anglin has argued that the Household Defendants had knowledge and failed to act, without supporting evidence on this issue the court cannot conclude that Anglin's argument under *Barlow* is sufficient to defeat summary judgment.

In support of her agency theory, however, Anglin has provided this court with citations to deposition evidence. Anglin points to evidence that the Household Defendants approached the distributors with the concept of financing satellite system purchases through a private label credit card program and that the Household Defendants provided dealers with a payment estimator. Scott Stansbury Deposition, pages 91–92. Anglin also points to a deposition of Craig Myers, the former Assistant Vice President and National Sales Manager of Household Retail Services Inc., in which he testified that the Household Defendants created application forms and other documents, including sales slips to be used by sales personnel soliciting potential cardholders. Myers Deposition One, page 65. Myers also stated that the Household Defendants were responsible for printing the disclosure forms that were supplied to the customers. Myers Deposition Two, pages 26–

27. Myers testified that the salespersons would explain the financing to the customer and would be trained by the distributor as to what to tell the customer. Myers Deposition Two, page 27. Myers further testified that the Household Defendants trained the distributor, who then trained the dealer to have the customer fill out the credit application correctly and sign it. Myers Deposition One, pages 52, 54. Myers stated, "HRS and myself specifically had communication with each of those distributors with regards to parts of the program that we wanted them to pass along to the dealers." Myers Deposition Two, page 28. Myers also testified that the dealer was trained through the distributor to inform the customer that what they were applying for was financing to pay for the satellite system. Meyers Deposition One, page 74. Anglin has also pointed to a portion of Myers' deposition in which he stated that he was aware of some customer complaints about not knowing why they had received a credit card. *Id.* at 75.

Anglin cites this court to *Ragsdale v. Life Ins. Co. of North America*, 632 So.2d 465 (Ala.1994) to demonstrate that this evidence creates a question of fact as to agency. In *Ragsdale*, the Alabama Supreme Court held that there was substantial evidence that an agency relationship existed between an insurance company and a city where two of the city's employees bore the full burden of explaining the insurance policy to other city employees. The insurance company had sent representatives to train the two city employees to administer the policy and explain its benefits to the rest of the employees. *Id.* at 467. The court reasoned that the insurance company could not give full power to the city of explaining the policy and then be exempt from liability when the city misrepresented the coverage available to an employee. *Id.* at 468.

Other Alabama Supreme Court decisions have also indicated that evidence of control through training is significant in determining whether there is evidence of an agency relationship. In *Malmberg v. American Honda Motor Company, Inc.*, 644 So.2d 888 (Ala. 1994), the Alabama Supreme Court held while evidence of logos on signs and products was not sufficient to create an inference of agency, when combined with evidence that the company instructs and trains dealers as to what warranties are or are not available on products and that the company provided mechanics to ensure that the dealer provided the warranty, there was a question of fact as to whether the dealership was an agent with respect to a representation about a warranty. Similarly, in *Mardis v. Ford Motor Credit Company*, 642 So.2d 701, 705 (Ala.1994), it was significant to the court that there was no evidence that the finance company exercised influence over negotiations with customers or had authority over how the business of selling cars should be conducted.

■ As was set out above, Anglin has cited to deposition testimony of Myers that he specifically, and Household Retail Services in general, trained distributors, who were then to train dealers, as to the parts of the program they wanted passed on, including financing disclosures. Alabama Supreme Court decisions, including those cited by the Household Defendants, and discussed by this court in *Wilson*, have found that there is no evidence of an agency relationship where none of the evidence provided is inconsistent with the extending of credit by an institution. *See e.g., Battles v. Ford Motor Credit Co.*, 597 So.2d 688 (Ala.1992). As the evidence cited by Anglin establishes that there is more of a connection between Household Retail Services and the sales person than that present in a mere extension of credit, as there was in *Wilson*, and as this evidence falls within the reasoning of *Ragsdale* and *Malmberg*, the court concludes that Anglin has created a question of material fact as to the existence of an agency relationship between Household Retail Services and James Love.

■ The court notes that while evidence has been presented that Household Retail Services at least retained a right, if it did not exercise the right, to control certain aspects of the dealership employee's day-to-day work, there has been no evidence presented which would establish a similar agency relationship between James Love and either Household Bank (Illinois), N.A. or Household Bank (Nevada), N.A. Consequently, summary judgment is due to be granted as to Household Bank (Illinois), N.A. and Household Bank (Nevada), N.A. on this claim.

Aside from the respondeat superior question, the Household Defendants also challenge Anglin's ability to demonstrate that there is a question of fact presented as to whether the elements of fraudulent suppression or misrepresentation have been met. To have a claim for fraudulent suppression, the plaintiff must show (1) that the defendant had a duty to disclose material facts, (2) that the defendant concealed or failed to disclose those facts, (3) that the concealment or failure to disclose induced the plaintiff to act, (4) that the defendant's action resulted in harm to the plaintiff. Ala.Code § 6–5–102 (1993); *Jewell v. Seaboard Indus., Inc.*, 667 So.2d 653 (Ala.1995).

■ The Household Defendants point out that Anglin stressed in her deposition that she was upset when she was billed separately for programming services. She states that James Love told her that programming was included in the price he quoted her. Anglin Deposition, page 73. She contends that she was not told that she would have to pay for programming separately after the three months. *Id.* The document which Anglin signed, however, had printed information on it which states that she would receive free programming for only three months and that after that she could renew at the best possible customer rate. *See* Household Defendants' Exhibit 4. Because the facts which Anglin contends should have been disclosed were, in fact, disclosed in a document presented for her review and signature, and the facts were written on the paper at the time that she signed it, there was no suppression of the fact that Anglin would have to pay for the programming she received after three months. *See Robinson v. JMIC Life Ins. Co.*, 697 So.2d 461 (Ala.1997)(affirming summary judgment on suppression claim where plaintiff signed document disclosing information allegedly suppressed); *see also Locklear Dodge City, Inc. v. Kimbrell*, 703 So.2d 303 (Ala.1997); *Williams v. Norwest Financial Alabama, Inc.*, 1998 WL 32568, No. 2961076 (Ala.Civ.App. Jan. 30, 1998). Accordingly, Anglin has failed to demonstrate that there is a genuine question of material fact as to her fraudulent suppression claim based on failure to disclose that she would have to separately pay for programming.

To establish a claim for fraudulent misrepresentation, a plaintiff must show (1) that the representation was false, (2) that it concerned a material fact, (3) that the plaintiff relied on the false representation, and (4) that actual injury resulted from that reliance. Ala.Code § 6–5–101 (1993); *George v. Associated Doctors Health & Life Ins. Co.*, 675 So.2d 860 (Ala.1996).

In her brief, Anglin refers to her Complaint and states that she has alleged that there were two representations made by James Love, which were that the purchaser would have to make a certain monthly payment for a set number of years and/or that all finance charges were included in the stated "price" for the system.

The Household Defendants point out that Anglin stated in her deposition that James Love never told her how long it would take to pay for the satellite system by making the minimum monthly payments. Anglin Deposition, page 96, lines 2–7. Given that this evidence is apparently undisputed, the court concludes that no question of fact is presented as to whether James Love misrepresented that the monthly payments would be made for a certain number of years.

■ As to Anglin's contention that all finance charges were included in the price, the Household Defendants argue that Anglin testified that she understood what it meant to finance a purchase and that financing involved paying interest. Anglin Deposition, pages 14–15. The Household Defendants also point out that Anglin signed a document which states "the Buyer understands that by signing the Application he/she has agreed to finance the purchase of satellite equipment and programming under a revolving credit card program provided by the Dealer through Household Retail Services, Inc./Household Bank (Illinois), N.A." Household Defendants Exhibit 3. The Household Defendants argue, therefore, that Anglin cannot now contend that this information was not disclosed to her. In other words, the Household Defendants argue that it was clear from the documents Anglin signed that the purchase Anglin was making was a financing arrangement.

In her Deposition, it does not appear that Anglin is contesting that she was aware she

had entered into a financing arrangement. In fact, Anglin agreed in her deposition that she understood that her satellite purchase was similar to her VISA or Sears card in that she was being charged interest on the balance that was not paid off. Anglin Deposition, page 55. Anglin also stated in her deposition that she realized she had to pay interest, but James Love should have explained to her that the thirty-five hundred dollars did not include the interest she would be paying. *Id.* at page 76. Anglin states in her deposition that James Love told her she "was going to pay the thirty-five hundred and that was it, everything was included." *Id.* at 72–73. She also explained that she thought maybe the satellite only cost fifteen hundred and the finance charge was included in the amount James Love told her. *Id.* at 75–76.

The Household Defendants have argued that Anglin would have had to have closed her eyes to the truth to have thought that the amount quoted by James Love included interest because the documents which Anglin had in her possession indicated that $3,708.94, the $3,500 quoted plus tax, was the amount to be financed.

In *Foremost Ins. Co. v. Parham,* 693 So.2d 409 (Ala.1997), the Alabama Supreme Court stated that the justifiable reliance standard which had been adopted by the court in 1989 would not longer be applied and that the reasonable reliance standard was now applicable. In so holding, however, the Alabama Supreme Court also stated that the reasonable reliance standard would only apply to cases filed after March 14, 1997. Anglin's Complaint was filed in 1996, and the purchase at issue was made in 1994, therefore, the justifiable reliance standard applies to this case.

The Household Defendants have cited this court to two decisions in which the Alabama Supreme Court found that there was no justifiable reliance because contract documents were clear in their statements, so that the plaintiff would have had to be blind to the truth to rely on a different representation. *Harrington v. Johnson–Rast & Hays Co.,* 577 So.2d 437 (Ala.1991); *McConico v. Corley, Moncus and Bynum, P.C.,* 567 So.2d 863 (Ala.1990). In this case, however, there is

not really a question of a direct conflict between the representation relied on and statements contained in documents. Instead, Anglin has explained she was told that the $3,500 covered everything, and so she relied on this representation, thinking that interest which would have to be paid was included in this amount. As to the contention that Anglin would have had to have closed her eyes to truth not to know the amount financed, Anglin has stated in her deposition that although she signed a document which now reflects that the amount financed was $3,708.94, the $3,500 quoted plus tax, "I signed it several papers before, but he didn't add all that-he didn't all this at my house that night." Anglin Deposition, page 77. She states that she may have signed the document, but she and James Love did not go through all the paperwork that night and he might have sent it to her. *Id.*

Applying the justifiable reliance standard, and considering Anglin's evidence that James Love told her she owed $3,500 which included everything, and did not explain that the finance charge was in addition to that, rather than included, and given Anglin's testimony that the amount to be financed was not included on any document at the time that she signed it, this court cannot conclude that Anglin should have been alerted to an untrue statement by the documents which she signed. Instead, considering all of the evidence in the record, the court concludes that a jury question has been presented as to whether Anglin justifiably relied on the representation which was made to her. Therefore, summary judgment is due to be denied on this claim.

### B. Claims for Negligent and Wanton Hiring, Failure to Train, and Supervise

Anglin has also brought claims for negligent and wanton hiring, failure to train and/or supervise. The Household Defendants have moved for summary judgment on the basis that because James Love was not an agent or employee of any of the Household Defendants, the Household Defendants had no duty to train or supervise him or, alternatively because there was no fraud or suppression, that summary judgment is due to be granted on these claims as well. The Household Defendants point out that this

court has recognized that a defendant does not have a duty of care in training and supervising a person if the person was not employed or associated with the defendant. *Wilson,* 964 F.Supp. at 1555.

██ Anglin has presented testimony which this court has found creates a question of fact as to an agency relationship between Household Retail Services and James Love and that creates a question of fact as to Anglin's fraud claim. Therefore, summary judgment is not due to be granted on the bases asserted by the Household Defendants. Anglin has not, however, created a question of fact as to any purported agency relationship between James Love and Household Bank (Illinois), N.A. or James Love and Household Bank (Nevada), N.A. Accordingly, these defendants are entitled to summary judgment on the negligent and wanton hiring, failure to train, or supervise claims.

### C. Conspiracy

██ As was discussed above, Anglin's alternative theory for holding the Household Defendants responsible for the alleged fraud in this case is that the Household Defendants were acting as a part of a conspiracy to defraud. Under Alabama law, a civil conspiracy is a combination to accomplish an unlawful end or to accomplish a lawful end by unlawful means. *Scott v. Commonwealth Land Title Ins. Co.,* 518 So.2d 102 (Ala.1987).

The Household Defendants respond that there is no evidence to create a question of fact as to the existence of a conspiracy because Anglin is unable to demonstrate that there was an agreement to achieve an unlawful end or a lawful end by unlawful means.

██ The Household Defendants point to *Scott v. Commonwealth Land Title Insurance Company,* 518 So.2d 102 (Ala.1987), in which the court explained that one's material relationship with a person accused of fraud does not make that person subject to a claim of conspiracy to commit fraud. This court has found that there is a question of fact as to the agency relationship between Household Retail Services and James Love based on Household Retail Services's training. A principal can be held liable under the doctrine of respondeat superior for the torts of an agent acting in the line and scope of his employment even though it did not authorize or ratify such acts or even expressly forbade them. *Pacific Mutual Life Ins. Co. v. Haslip,* 553 So.2d 537 (Ala.1989), *aff'd,* 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991). While Anglin has asserted in brief that there is evidence that the Household Defendants were aware that dealers were making fraudulent statements, no such evidence has been pointed to for this court's review. In short, while the court has found that there is a question of fact as to the existence of an agency relationship, the facts upon which this finding have been made are not sufficient to establish that the Household Defendants and James Love were part of a conspiracy to defraud. In addition, there is no evidence to indicate that Household Bank (Illinois), N.A. or Household Bank (Nevada), N.A. had any sort of agreement, to defraud Anglin or otherwise, with James Love. Accordingly, Anglin has failed to create a genuine issue of material fact as to her conspiracy claim against any of the Household Defendants.

### V. CONCLUSION

For the reasons discussed, the court concludes that the Motions for Summary Judgment are due to be GRANTED in part and DENIED in part. A separate Order will be entered in accordance with this Memorandum Opinion.